## Chesapeake & Ohio Railway Company v. Williams' Admr.

(Decided May 3, 1912.)

### Appeal from Bath Circuit Court.

Torts—Peremptory Instruction.—In a suit for damages for personal injury, a peremptory instruction for the defendant is proper only when, after admitting every fact proven by plaintiff's evidence to be true, as well as all reasonable inferences that can be drawn therefrom, the plaintiff has failed to establish his case.

SHELBY & SHELBY, R. L. NORTHCUTT, LEWIS APPERSON and H. C. GUDGELL for appellant.

C. W. GOODPASTER for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

George Williams was struck and instantly killed by a freight car while standing on a side-track of the appellant at Preston, Ky. This action was brought by his administrator to recover damages for his death, and resulted in a verdict and judgment against the appellant for $2,500.00; and to reverse that judgment the railroad company prosecutes this appeal.

Preston is a station in Bath county, where the traveling public leaves the train to go to Owingsville, the county seat, which is about four miles north of Preston. The appellant has three tracks at Preston; one known as the house track, lying immediately north of the station, which extends eastwardly and westwardly at this point; the passing track being immediately next to and south of the station; and the third or main track, which lies south of the passing track. These two side-tracks were connected at either end of the station with the main line, leaving the station or depot entirely enclosed by the tracks. It was thus necessary for those having business at the station to pass over at least one of the tracks. The postoffice was kept in the station, thereby requiring people to frequent the station for the purpose of getting their mail. About thirty steps west of the station a public road, leading from Owingsville into Montgomery county, crosses the track; and it was not necessary, therefore, for one who did not have business at the postoffice or station to cross the track in front of the station. When cars were left standing on the north or house track it was customary to leave an opening between them so that persons going to the station could cross the track immediately opposite the station without going down to the road crossing.

On November 5, 1910, there was an empty car standing on the house track near the east end of the station, and attached to it were two hopper-bottom gondola cars, from which coal was being unloaded. A short time before the accident Williams was seen leaving Johnson's grist mill in the neighborhood, carrying a sack of meal on his shoulder. After the accident this meal was found in a barn about 150 yards from the mill. He was next seen standing on this north or house track about six feet west of the empty car above mentioned, and opposite the entrance of the station talking with Clint and Reuben Wilhoit, where he remained from ten to fifteen minutes. In the meantime appellant's local freight train was switching cars and discharging freight. It became necessary to move the empty car and the two gondola cars in order to get other cars on the track; but before they moved these cars it was found that a few bushels of coal had been let out of the bottom of one of the hopper-bottom cars and remained under the car on the track; and two negro workmen had been sent under the car to remove it. While they were thus at work, Lowman, ap-

pellant's brakeman, notified them to hurry and get the coal out of the way so that the cars could be moved. Lowman then walked to the west end of the empty freight car and called out to Williams and the two Wilhoits, who were standing upon the track talking, as above stated, to "look out, we are going to back-up." Lowman then went back some 25 or 30 feet to where the men were removing the coal, and stood there some four or five minutes while they completed the work. When they had finished he hallooed, "Look out, we are going to back-up." He then moved back a few steps from the track until he could see the head brakeman near the engine, to whom he gave a signal to back-up. At the time Lowman called out the last mentioned warning he was about 26 feet from where the Wilhoits and Williams were standing, but he could not see them, as they were standing at the end of, and behind the empty freight car, and the track curved. Appellee's witness, Shultz, was standing on the platform near Williams and the Wilhoits, and plainly heard the warning given by Lowman, and called to them to "look out." The two Wilhoits testify that they heard this warning from Shultz, although they did not remember having heard the warning given by Lowman. Reuben Wilhoit further testifies, "I told Mr. Williams for us to get over here," meaning towards the station and away from the track. Williams and the two Wilhoits started southwardly to step on the platform, and the two Wilhoits cleared the track without any difficulty. It seems, however, that Williams first started to follow them, then hesitated, and turned back towards the north, and was struck and killed by the car. There was considerable evidence tending to show that Williams was under the influence of liquor.

Appellee based his right to recover upon the alleged negligence of Lowman, the brakeman, and Dennis, the engineer of the freight train, in suddenly pushing the freight car upon Williams without giving him any signal or notice, whereby he could have saved himself from the impending danger. Quite a good deal of testimony was introduced by the appellee tending to show it was the custom of the people having business at the station to cross the north switch or house track, as it is called, immediately opposite the station and that a passway had become established over the track at that point for the use of the public. The appellant denied

negligence on the part of its empoloyees, and relied upon the contributory negligence of Williams in bar of his right to recover. Upon this appeal the appellant rests its right to a reversal upon the sole ground that the court should have sustained its motion to peremptorily instruct the jury to find for the defendant.

In examining the testimony, therefore, we should bear in mind the well established rule that a peremptory instruction for the defendant is proper only when, after admitting every fact proven by plaintiff's evidence to be true, as well as all reasonable inferences that can be drawn therefrom, the plaintiff has failed to establish his case. Fugate vs. City of Somerset, 16 Ky. L. R., 807; Miller vs. Metropolitan Life Ins. Co., 28 Ky. L. R., 225; and Southern Railway Co. in Kentucky vs. Goddard, 121 Ky., 577.

There is very little conflict in the testimony in this case; on the contrary, the facts are comparatively few, and well established. It clearly appears from the testimony introduced by appellee that Reuben and Clint Wilhoit and Williams, who were standing together and talking to each other, had warning of the intention of the engineer to back the car, which resulted in Williams' death. Reuben Wilhoit, Clint Wilhoit and Shultz, all of whom were indifferent witnesses, and not in the employ of the appellant, say that Shultz gave them the warning. It is true the Wilhoits say they did not hear the warning called out by Lowman; nevertheless, they had the warning which was originally given by Lowman and repeated to them by Shultz. Not only does Shultz say he repeated Lowman's warning, but the fact that Shultz gave the warning to the Wilhoits and Williams strongly corroborates Lowman's testimony that he had called out the warning in the first place, since it is not probable that Shultz would have given the warning on his own motion, and in advance of the movement of the car. If the warning thus originally given by Lowman reached Williams through the agency of Shultz, its effect was the same as though it had been given directly by Lowman to Williams. It is not necessary that Williams should have received the warning directly from the brakeman. The question to be determined is: "Did he have warning such as the law provides must be given him in such case?"

Furthermore, it is clearly apparent from the evidence, not only that Williams did have sufficient warn-

ing to have saved himself from danger, but that his own gross negligence and carelessness was the sole cause of his death. He was standing upon the track talking to the two Wilhoits, and if he had heeded Reuben Wilhoit's admonition, and had followed him as he evidently, at first, intended to do, Williams would have gained the platform in safety, as the Wilhoits did. But, after starting to follow the Wilhoits, he seems to have hesitated, and in turning back to go the other way, he was caught by the moving car before he could get beyond the track.

Furthermore, Lowman was standing only about 26 feet distant when he gave the warning that the cars were about to back-up; and, although he could not see the Wilhoits and Williams, who were standing behind the car and close to it, it is entirely probable that they could have heard his warning, as Shultz heard it, if they had not been engrossed in their own conversation. Wood, a section foreman, Thomas a section employee, and Reed, one of the men who was assisting in unloading the coal, all testify that they heard Lowman call out the warning that he was going to back up, before the engine started the cars. So, the alleged negligence of appellant is not only rebutted by the appellee's own testimony but it is shown beyond a doubt, and without any contradiction, that due warning was given to Williams of the approach of the train. It is not negligence to fail to give warning of the approach of a train to one who knows it is coming. I. C. R. R. Co. v. Willis' Admr., 123 Ky., 637. There is no conflict in the evidence upon the point that warning was given in due time by Shultz; and, that being true, it must follow that Williams' death was due solely to his own negligence. The law requires a man crossing tracks at a public crossing to exercise proper care to learn of the approach of trains and keep out of their way. L. & N. R. R. Co. v. Cummins' Admr., 111 Ky., 336; Southern Railway Co. v. Winchester, 127 Ky., 153. And, certainly as high a degree of care is required of one standing for ten or fifteen minutes upon a track, in the full light of day and within six feet of a freight car, in a yard where the cars are liable to be moved at any time. In absolute disregard of this duty, as is shown by the testimony of Shultz and the two Wilhoits, Williams stood upon the track talking, which was in itself an act of negligence under the circumstances, without making any effort whatever to ascertain or guard

against the movements of an engine that every one could see. Williams was warned by both Shultz and Reuben Wilhoit, to say nothing of the warning given by Lowman. Under all the evidence we are satisfied the case comes within the rule above announced, and that after admitting every fact proven by the plaintiff to be true, as well as every reasonable inference that can be drawn therefrom, the plaintiff failed to establish his right to recover, by showing that Williams' death resulted wholly from his own gross negligence. The court should have peremptorily instructed the jury to find for the defendant.

Judgment reversed, and cause remanded for a new trial.