## Age's Administrator v. Louisville & Nashville Railroad Co.

(Decided May 9, 1912.)

### Appeal from Hart Circuit Court.

1. Railroads—Death of Section Foreman—Voluntarily Putting Himself in Place of Danger—Negligence.—Where a section foreman placed himself between two dead cars for the purpose of requesting the agent not to lock the depot until he could get some material out of it later in the evening, and was so situated between these cars that those in charge of a moving train could not see him, and it appearing that there was no necessity for his going between these cars and remaining there, and that he could have delivered the message while standing between the tracks opposite the opening between the cars as well, if not better, than by going between them, he was guilty of such negligence as prevented a recovery by his administrator for his death, caused by being run over by the moving train.

2. Railroads—When Not Under Obligations to Take Special Precaution to Avoid Injuring Person.—The law is well settled both in this State and elsewhere that a railroad company is not under obligation, in moving its engines and cars in its own switchyard, to take special precautions or give special warnings to avoid injuring any unauthorized person who may, for his own convenience, go therein, until the presence of such person in a situation of danger has been discovered.

3. Railroads—When No Recovery Against for Injury of Person Can Be Had.—Where one, whether employe, licensee or trespasser, is injured while attempting to pass between standing cars, without invitation, express or implied to do so, there can be no recovery, unless those in charge of the train, after his peril is discovered, fail to exercise ordinary care to avoid injuring him.

4. Railroads—Evidence.—The uncontradicted evidence showing that deceased voluntarily went between these cars, and thus exposed himself to the danger which resulted in his death, and that the act was neither called for nor necessary in the discharge of any duty he owed the company, the trial court properly held that his administrator was not entitled to recover in an action against the company for his death.

S. M. PAYTON for appellant.

BENJAMIN D. WARFIELD, SIMS & RODES and WATKINS & CARDEN for appellee.

OPINION OF THE COURT BY JUDGE LASSING.—Affirming.

Joseph Age was an employe of the Louisville & Nashville Railroad Company as section foreman at Glasgow Junction, Kentucky. On the afternoon of October 8, 1910, he was run over by one of the cars of the defendant company and so seriously injured that he died on the following morning. Charging that his death was due to the negligence of the company in the operation of its train, his administrator sued to recover damages therefor. The company denied liability and pleaded contributory negligence. The case proceeded to trial and, at the conclusion of all of the evidence, the court instructed the jury to find for the defendant, which was done. To test the correctness of that ruling the plaintiff has prosecuted this appeal.

It appears that, on the afternoon in question, a southbound local freight train, known as No. 31, arrived at Glasgow Junction about four-thirty, and for ten or fifteen minutes after its arrival at that point it was engaged in switching around and through the yards for the purpose of unloading freight, taking on some empties that were there, and also leaving off certain cars that were to remain there. In order to facilitate this work, the caboose and two freight cars were left standing on the main track nearly opposite the freight depot. The passenger depot is some distance south of the freight depot. There was at that time standing on what was known as the "house track" four freight cars. After the caboose and two cars had been cut loose from the train, the conductor went into the caboose to make out his report, which he was required to do, and the engineer, fireman, two brakemen and a flagman were left in charge of the balance of the train, consisting of

some twenty-four or five cars. One of the brakemen went down the track to the south some distance and, after the train had passed beyond him, threw the switch so as to let it in on the house track. After throwing the switch he passed over to the opposite side of the track and stood there for the purpose of transmitting to the engineer the signals from the rear brakeman, who was between him and the freight depot. The flagman was near the freight depot for the purpose of seeing that the four cars that were standing on the track were coupled when the train backed into them. When he was ready he notified the brakeman next to him to back up, and this signal was transmitted by the rear brakeman to the head brakeman, who had thrown the switch, and by him to the engineer, and the train was immediately backed up, going, according to the testimony of all the witnesses who fixed the speed, at from two to four miles an hour. In this way it backed down on the house track and up against the four cars that were standing thereon. Immediately following the impact the flagman heard some one halloo and, looking, he saw Age down in between two of these cars. He immediately gave the stop signal and it was passed as rapidly as could be by the other employes of the train back to the engineer, who at once stopped the train, but not before it had gone possibly two car lengths and dragged Age along the ground and run the wheels upon him and so seriously injured him as to cause his death.

As stated, Age was a section foreman at that point and was engaged that afternoon with his men in doing work there at the yards. One of his men was perhaps a hundred yards from the place where the accident occurred, working on the track; and four or five others were nearer, shoveling cinders. Age had been around there, superintending this work, and, about fifteen minutes before the injury, had gone up to the freight depot for the purpose of requesting the agent not to lock up the depot because he wanted to get some material out of it later in the evening. He went over to the freight depot and stood upon the platform and talked to the agent, and, while there, was observed by the rear flagman and others who were about the depot. He went away and neither the rear brakeman nor the flagman saw anything of him any more until after he was injured.

The assistant freight agent testifies that just before

the train was backed into these standing or dead cars, Age appeared between two of them and said something to him, but he could not understand what it was, and, just as he did so, the cars came together and he was thrown to the ground. After the train had been stopped and he had crawled out from under the car, either by his own effort or with the assistance of others, he stated that he had gone in between those cars for the purpose of requesting the freight agent not to lock the depot. The cars between which he went were coupled together and there was a space of only about eighteen or twenty inches between them in which he could stand. No one saw him go in there; no one knew of his presence there except the assistant freight agent, and he did not discover him there until just at the moment when he was injured.

All of the employes of the train, in directing its movements as it was caused to pass upon and back over the house track, were stationed where, from the necessities of the case and the duties imposed upon them, they were required to be. One of them had to be up near the switch. The track at that point was curved, so that the engineer could not see the rear brakeman. This necessitated the placing of some one between him and the rear brakeman. The flagman was further back, at a point where he could see that the cars were coupled up when the train backed against them; and while it is insisted by counsel for appellant that some one should have been on top of the cars, keeping a lookout, it is shown that, had they been there, it would have been impossible to have seen the deceased after he went in between these cars. In fact, it is apparent that the opportunity for seeing him would have been better on the ground than on top of the car.

No signal was given by ringing the bell or blowing the whistle that this train of cars was going to be backed into the four dead cars standing on the track, but the movement of the train was controlled by three of its employes who were stationed along down the track in the direction in which it was moving. And it is of this failure to blow the whistle or ring the bell, coupled with the further failure on the part of the company to keep some one on top of the rear car when it was being backed that counsel for appellant complain.

Deceased had been in the employ of the company for some time at that point and is shown by the testi-

mony to have been familiar with the practice of the crew of this particular local in the handling of cars and freight at that depot. It made the trip daily, taking away the cars that were no longer needed there, leaving such as were required, and, in order to do this, switched around and through the yards practically as it was doing on this occasion. It is in testimony by some of the witnesses that he stated, immediately after the accident, that he thought the freight had gone south, and in this way his carelessness or negligence in getting in between the two cars as he did is sought to be excused. It is shown that, at the time he went in between these two cars, the caboose and the two freight cars which had been detached with it from the train were standing on the main track, almost opposit the place where he went in between these two cars, and, from his knowledge and familiarity with the make-up of freight trains and the movements of this particular train, he must have known that it would not leave the yard and proceed to its destination without the caboose. It is further shown that, from the position in which he must have been just before he went in between these two cars, had he looked he could not have helped but see the local backing down upon them. The only theory upon which his conduct in going in between the cars at the time and in the manner in which he did can be explained at all is that, in a moment of forgetfulness, he failed to look or take notice of the train's approach and, unconscious of his danger, walked in between the cars. The flagman, who was standing very near to the point where he went in between the cars, testifies that he did not see him after he left the porch some ten or fifteen minutes before and did not know that he was about there at the time; that the first notice he had of his presence there was when he looked in that direction after he heard his cry of distress.

Two propositions are clearly presented by the record—first, that, at the time the train backed against the four standing cars on the house track and caused the latter to move, deceased was so situated between two of these cars that none of the train men could see him; and second, there was no necessity whatever for his going between these cars or remaining there. In fact, it is apparent that he could have delivered the message while standing between the tracks opposite the opening between the cars as well, if not better, than by going between them. The flagman, Jesse McQuaddy, and the

brakeman, Charles Goshum, both testify that it was not necessary for him to go between these cars, and that he could have communicated with the freight agent as well, if not better, without doing so. Their testimony upon this point is uncontradicted and must be accepted as true. Sinclair's Admr. v. I. C. R. R. Co., 129 Ky., 828.

A great deal of evidence was introduced to show that there is much passing back and forth over the tracks at Glasgow Junction by employes of the company in going to and from the water closet to the freight and passenger depots and in the discharge of their duties there in the yard, and, because of this condition, it is insisted that it is the duty of the railroad company to give constant warning of the movement of its trains, by sounding the whistle or ringing the bell, and also to keep a lookout. If decedent had been run over by the engine which was drawing this freight train, or the cars, when being backed, had passed over him, there would be much force in this contention. But when it is shown that the deceased had voluntarily put himself in a position of danger, where his peril could not be seen by those operating the train, and that there was neither necessity, occasion nor excuse for his going there, evidence that the company was remiss in the discharge of certain duties which it owed to the public, whether employes or trespassers, is of no avail; for although the company may have been negligent, still, if the deceased was himself negligent, and but for his negligence the injury could not have happened, there can be no recovery.

This court has frequently been called upon to pass upon cases similar to the one under consideration. In Brackett's Admr. v. L. & N. R. R. Co., 33 R., 921, a lady attempted to go to the railroad station at Four Mile, Kentucky, to meet a train upon which she was expecting her husband. Several cars had been left standing upon a side track which, with the main track, she had to cross in order to get to the station platform. The cars were not coupled and there were openings between them. She attempted to pass through one of these openings and just at that moment a train backed in onto that track, pushed one car against the other, and caught her in the act of crossing and so injured her that she died. In a suit for damages for her death the lower court held that she was not entitled to recover, and, upon appeal here, in affirming the judgment, the court said:

"It is insisted for the plaintiff that, inasmuch as it

was train time, and persons were expected to be passing about these tracks, going to and from the station, the company should have anticipated the presence of persons between these cars, and therefore is liable to Mrs. Brackett. To so hold would be, in effect, to say that, before moving cars situated like these, the company should send a man along the cars, and warn everybody to get out of the way; for it is manifest that nothing short of this would have done Mrs. Brackett any good. All that occurred was that the short space between those two cars was closed up when the freight train came in at the switch and pushed the other cars down in front of it, closing up the other spaces between them until they ran back against the cars next to Mrs. Brackett. Where space between cars has not been left as a passway for people, especially where it is as narrow as the one shown here, the company is not ordinarily required to anticipate that persons will be in the space, and persons who thus go between cars take the risk of the space being closed up. The freight train at the other end of the switch could have plainly been seen by those ladies before they undertook to pass across the track, and if they had considered at all, they would have known that the train had to come in on the side track to get out of the way of the passenger train. * * * It would be a hard rule to hold the railroad responsible for an accident like this, where the person injured had no right to be where she was, and where the railroad company was not required to anticipate that any one might be between the cars.''

A striking similarity between the case at bar and the one from which we have just quoted will be readily seen. The only difference is that, in the case at bar the cars were coupled up. Deceased could not pass entirely between them, but could only go part way through. By the exercise of any care on his part he must have known, first, that the freight train had not left Glasgow Junction, but was still in the yard; and second, had he looked he could not have avoided seeing it backing down on these cars between which he was about to enter. Again, in the Brackett case, the deceased was an inexperienced woman, not familiar with trains and their movements, whereas, in the case at bar the deceased was a man experienced in railroad matters and should have appreciated the danger to which he was exposing himself. There was no necessity for his crossing the track, and

particularly for his going between these cars, for, by standing back six or eight feet from the car, he could have called to the agent and delivered his message just as well, and with absolute safety to himself. It is urged by counsel, however, that deceased was lulled to a feeling of security by a mistaken belief that the local freight had left the yards. As stated, he had but to look about him to know that this was not true, and, if he failed to advise himself of the true conditions when he might have done so by simply exercising his sense of sight, he is in no condition to complain of the company because injury resulted by reason of this failure on his part.

This same principle was recognized in L. & N. R. R. Co. v. Hocker, 111 Ky., 707. Hocker was employed by the railroad as operator and train despatcher. His duties kept him in what is called the "tower." He had occasion to go to the water closet, left the tower and started in the direction thereof, crossed two of the tracks and found the third track obstructed by a train. He thereupon stepped in between two high box cars, standing on the track next to the one on which the train was moving, and proceeded to urinate, and while in this act, the cars were moved. Without notice or warning he was knocked down and seriously injured. He testified that he did not pass entirely between the cars; but there was no evidence tending to show that his presence there was known to any of those in charge of the train. In disposing of the question, the court said:

"The law is well settled, both in this State and elsewhere, that a railroad company is not under obligation, in moving its engines and cars in its own switch yard, to take special precautions or give special warnings to avoid injuring any unauthorized person who may, for his own convenience, go therein, until the presence of such person in a situation of danger has been discovered."

The reason for the rule announced in the foregoing opinion is found in McDermott v. Kentucky Central R. R. Co., 93 Ky., 408, where a recovery was sought for an injury to a boy eight years old occurring in the yards of the company. In denying a recovery, the court said:

"As moving engines and cars to and fro in the yard of a railroad company is indispensable to safe and proper conduct of its business, it should be no more obliged to specially look out for presence of those who may go there without right than for trespassers on the main track

away from the yard. For to require the bell rung or whistle blown at every movement of an engine in the company's yard to and from a coal chute, water tank or turn table, however slowly or short the distance it might have to go, or that an extra employe be placed upon every backing engine simply to warn or look out for presence of persons having no right or reasonably expected to be there, when not at all necessary for safety of persons or property legally entitled to care and protection by the company, would be unreasonable and oppressive.''

To the same effect are Southern Railway Co. v. Thomas, 29 Ky. Law Rep., 79, and Kendall v. L. & N. R. R. Co., 25 Rep., 793.

Thompson on Negligence, 2d ed., Sec. 1706, announces the same principle, in the following language:

''The railroad company, then, both in its own right and in the right of the public, has the right to a clear track; and it has the right to assume that this right will be respected by third persons. It is not, any more than any other land owner is, bound to take special precautions or to give special warnings in anticipation of the possibility of this right being violated; in other words, in anticipation of the possibility of tresspassers being upon its tracks. It is, for example, under no obligation to maintain a special lookout upon its lines, or within its yards for the protection of mere trespassers who may possibly be there, but who have no right to be there. Nor does a rule of a railway company, requiring a lookout to be maintained for the protection of its passengers and employes, give a right of action on the ground of negligence to a trespasser who is injured through the neglect to comply with it.''

Thus, it is seen that the law in this State is well settled, that where one, whether employe, licensee or trespasser, is injured while attempting to pass between, under or over standing cars, without invitation, express or implied, to do so, there can be no recovery, unless those in charge of the train, after his peril is discovered, fail to exercise ordinary care to avoid injuring him. The uncontradicted evidence showing that decedent voluntarily went between these cars, and thus exposed himself to the danger which resulted in his injury and death, and that this act was neither called for nor necessary in the discharge of any duty which he owed to the company, the trial court properly held that he was not entitled to recover, and the judgment is, therefore, affirmed.