## Million's Administrators v. Louisville & Nashville Railroad Company.

(Decided May 8, 1925.)

### Appeal from Harrison Circuit Court.

1. Railroads—Admission of Evidence of Ringing of Automatic Bell at Other Crossing Held Not Error, where Shown to be Audible.— In action for death of pedestrian at railroad crossing, where electric bell, situated at crossing 367 feet from crossing at which accident took place, was shown to be audible at distance of 1,000 feet, admission of evidence that at time of accident such bell was ringing was not error.

2. Railroads—Evidence Held to Sustain Verdict Denying Recovery for Death of Pedestrian at Crossing.—In action for death of pedestrian at railroad crossing, evidence tending to show that signals were given, that pedestrian could see approaching train for at least 1,000 feet, and that decedent walked into side of train held to sustain verdict for railroad.

3. Appeal and Error—Error, if Any, in Instruction Not Specifically Requiring Ringing of Bell or Blowing of Whistle, Held Not Prejudicial, in View of Plaintiff's Evidence.—Failure of instruction re-

quiring trainmen to give notice of train's approach to crossing to specfically require ringing of bell or blowing of whistle, though it may have been a technical error, held not prejudicial, where plaintiff's evidence was directed to prove that no such signals were given.

4. Railroads—Refusal to Submit Question of Installation of Extraordinary Precautions at Crossing Held Proper.—Where amount of travel over crossing was extremely limited, and despite obstructions pedestrian, before reaching track, could see train for 1,000 feet, held, that court properly refused to submit to jury question whether crossing was a dangerous one requiring installation of extraordinary precautions.

T. E. KING, R. P. BLAIR and WADE H. LAIL for appellants.

HANSON PETERSON, E. M. DICKSON, ASHBY M. WARREN, JOHN MARSHALL, JR., and WOODWARD & WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On the morning of November 12, 1921, Mrs. Nancy Million, a widow, some forty odd years of age, was killed by a fast train of the appellee and defendant below, Louisville & Nashville Railroad Company, at the intersection of South Main street with the double tracks of defendant in the town of Berry, a city of the sixth class, in Harrison county. This action by her administrators, as plaintiffs, and who are appellants here, was filed against defendant in the Harrison circuit court to recover damages for their decedent's death. The negligence averred in the petition was, that the crossing where decedent was killed was much used by the traveling public and was within the corporate limits of the town of Berry; that it was on account of obstructions to the view, and the amount of travel thereon, an especially dangerous crossing requiring extra precautionary measures for notifying travelers of the approach of trains, but which precautionary measures had not been adopted by defendant; that the operators of the train failed to give signals of its approach to the crossing and ran it at an excessive and dangerous rate of speed through the town and over the crossing. The answer denied all of the averments of the petition, except the death of Mrs. Million, and alleged that it was not produced by a collision of the engine with her body, but by her while walking on the street colliding with the side of the engine after it had both partially passed her and across the street, and it also contained a plea of contributory negligence.

Plaintiffs' reply made the issues and under the instructions given the jury by the court it returned a verdict for defendant, followed by a dismissal of the petition, after plaintiffs' motion for a new trial was overruled, and to reverse that judgment they prosecute this appeal.

Three grounds are argued and urged for a reversal of the judgment, which are (1), the admission of incompetent evidence offered by defendant over plaintiffs' objections; (2), the verdict was not sustained by sufficient evidence, and (3), error in the giving and refusing of instructions, each of which we will dispose of in the order named.

1. We are at a loss to account for the apparent seriousness of counsel for plaintiffs in urging the sufficiency of ground (1) to sustain a reversal. The town of Berry is one of the sixth class and contains between 500 and 600 inhabitants. The tracks of defendant, which run through it practically north and south, are double, the east one being the northbound track and the west one the southbound track. The train producing the accident was a fast southbound passenger train running on the west track. There are but two grade crossings within the corporate limits, one of them near the depot at a street known as Main street, and 367 feet south of it is the other one made by a street known as South Main street, and it was upon the latter that decedent met her death. She lived on the south side of South Main street, 83 feet east of the eastern railroad track and, according to the proof, the greatest number of people passing over that crossing within twenty-four hours does not exceed fifty persons. Some of the testimony showed that there are no more than twenty-five persons crossing there during the day. Photographs, which are proven to be correct and which are not contradicted, show that South Main street is but comparatively little used and has but few houses thereon, and it appears from them that the traveled way is unkept and the walks dilapidated and in some places apparently abandoned. It is furthermore shown by the photographs, and by the testimony of all the witnesses, that at a point on South Main street crossing at about eighteen feet east of the northbound track, a pedestrian can see a train approaching it for at least one thousand feet north of the crossing, and most of the witnesses place it as far as one thousand four hundred feet. It is practically uncontradicted that the train, on the fatal occasion, whistled at the usual

place for the station and after passing it, again whistled for the proper signal of the agent through the operation of the signal post located at the depot as to whether he had or had not orders for that train, and after he had answered that signal by indicating he had no orders another signal was given to notify him that his signal of no orders had been understood; also, that the bell on the engine was ringing and had been by an automatic contrivance since the train left Covington. It seems to be conceded that the signals we have indicated were given, but some of the witnesses introduced by plaintiffs stated that if the bell was ringing they did not hear it, although others beside the train crew testified most positively that it was. There was no effort to show that there was any whistling post as much as fifty rods from the crossing at which any signal was given, although the ones we have mentioned, or at least some of them, were given within that distance, from which it would seem to appear that the statutory requirement was substantially met, although the actually given signals were primarily for another purpose, since that purpose could not prevent their warning effect at a crossing within the required distance ahead. In addition, it was proven by two or three witnesses for defendant, that at Main street crossing there was a statutory electric bell which was in perfect working order and so equipped that when a train approached from either direction within a prescribed distance it would ring, and that on the occasion in question it was ringing. Proof was also introduced, and which was uncontradicted, that the ringing of that bell could be heard for at least 1,000 feet in every direction from it.

The only evidence complained of under ground (1), now under consideration, was the testimony about the location and ringing of the electric bell. No cases are cited from this or any other court in support of the contention that it was error to admit the introduction of that evidence, but in argument counsel urge, as though the two situations were analogous, that it would be clearly incompetent to prove in defense of an accident at one crossing that the defendant maintained a watchman or gates at another and different crossing 367 feet away, which no doubt would be correct, since neither the watchman nor the gates are noise makers and their ability to serve notice is confined to the particular crossing at which they are stationed and which is especially and abso-

lutely true with reference to gates that act altogether silently and impart no notice except locally. Not so with a bell, which may be, can be and is heard at all points within the reaching radius of its sound and it serves as a warning to all persons within that distance that a train is approaching from some direction and is a signal to them to beware when attempting to cross the tracks at any distance within that radius. Indeed, that invention, when in working order, as it was on the occasion in question, is as effective in giving a warning as is the blowing of the whistle or the ringing of the bell on the engine, and because it was established primarily to give warning at the crossing where it was located is no reason why its warning should not be heeded at other places where it may be heard. In so saying, we would not be understood as holding that as to crossings where such extra precautions were made necessary the location of an electric bell at one would relieve the company from also locating one at the other, but we do hold that it was not error for the defendant to prove the ringing of its electric bell located at one crossing when it could be heard at another nearby one where the accident happened. It, therefore, follows that this ground is without merit.

2. In disposing of ground (2) it will not be necessary to repeat the evidence stated by us in disposing of ground (1). There should be added to that evidence the testimony of the only three eye-witnesses to the accident who were introduced by defendant. Two of them were boys, one eleven and the other twelve years of age, who were playing marbles in front of the second residence south of the fatal crossing and east of the railroad tracks. They were, therefore, on the same side of the track from which the decedent approached it, and they testified that they saw her when she did so; that she had a red shawl over her head and, perhaps, holding it with one hand, and with her eyes apparently fixed upon the ground in front of her; that she neither looked to the right nor the left and walked across the northbound track, and just as the engine made the crossing she came in contact with some part of it near to or about the drivewheels. An adult witness, 1,000 feet south of the crossing, testified to the same facts and the testimony of those three witnesses is not only unimpeached but there was no effort to contradict them by any express testimony. Supporting it, the train crew testified that they knew nothing of the accident until they got further along

on their trip, and they then examined the engine and found no evidences of a frontal collision on any part of the pilot or other portions of its frontal structure, but they did find blood on the rear of the left cylinder, which was the side from which decedent approached. The three eye-witnesses whose testimony we have related also testified to hearing the signals from the engine and the roar of the approaching train. There was nothing else present to attract the attention of a traveler on the street nor was there any other noise to prevent one from hearing the approach of the train, even if there were no signals given. Neither was it attempted to be shown that there was any defect in either the sight or hearing of Mrs. Million. It is, therefore, extremely doubtful as to whether the court erred, as is insisted by counsel for defendant, in not sustaining its motion for a directed verdict in its favor upon the ground that the uncontradicted proof showed contributory negligence on the part of the deceased, which, if true, would dispense with the necessity of determining the alleged errors in respect to the giving and refusing of instructions as contained in ground (3). But, since we have concluded that the objections to the trial in that respect are not well taken, it will not be necessary to determine the question of the propriety or impropriety in refusing defendant's offered peremptory instruction and we will proceed to take up and dispose of ground (3).

3. The objections as a foundation for this ground relate to instruction number 1 given by the court, and its refusal to give instruction A offered by plaintiff in lieu thereof, and the refusal of the court to give to the jury instruction C offered by plaintiffs. Without consuming space necessary to incorporate these instructions *in hac verba*, we will content ourselves by stating their substance. Number 1 given by the court said to the jury that it was the duty of the defendant, in approaching the crossing in question, to give notice of its approach, to run its trains at such speed and to keep such lookout and use such other care to avoid injury to persons using the crossing as an ordinarily prudent person would do in running the train under like circumstances, and if the jury believed that the defendant's agents and employes in charge of the train as it approached the crossing negligently failed to give notice of its approach and failed to run it at a reasonable speed or to keep a lookout ahead or failed to use "such care as might usually be expected

of ordinarily prudent persons operating a railroad train under like circumstances in order to avoid injury to persons on or about to pass over said crossing," and by reason thereof decedent met her death while herself in the exercise of ordinary care for her own safety, then the law was for the plaintiff and the jury should so find.

Instruction A offered by plaintiffs differed from instruction 1 in that it attempted to define the character of notice that the operators of the train should give on approaching the crossing, which was "by ringing the engine bell or blowing the engine whistle to warn travelers of the approach of said train." It also contained, as did instruction 1 given by the court, the supposed duties of defendant as to the speed of the train and as to the lookout duty. So that, practically the only difference between the instructions was that in the one given by the court no mention was made of the ringing of the bell or the blowing of the whistle, while in the other those duties were expressly set out.

It should first be observed that the crossing in question was not in the country, but within an incorporated town, and did not come within the express provisions of section 786 of our statutes with reference to signals at country crossings. If, however, it could be held that the same rule as to country crossings with reference to the giving of signals should be applied to the crossing in question there is then to be determined whether there was any substantial difference between the instruction given by the court and that offered by plaintiff. It is true that in the cases relied on by plaintiffs' counsel, and many others from this court, the instructions did contain the character of notice that the defendant should give on approaching a crossing, i. e., by blowing the whistle or ringing the bell, but no case has been cited holding that a failure to refer to those two methods of warning or giving notice would be reversible error, and it is difficult for us to perceive wherein the jury could be · misled by such a submission under similar facts to those proven in this case, since a large part of plaintiffs' evidence was directed to prove that no such signals were given, or rather if given that the witnesses did not hear them and the jury could not have misapplied the given instruction or been induced thereby to disregard all the evidence that had been introduced before it upon the issues as to whether or not the whistle was blown or the bell rung before and at the time of the approach of the

train to the crossing. So that, if it could be considered as a technical error not to have mentioned in the instruction the two specific acts of ringing the bell and blowing the whistle it could not have prejudiced plaintiffs' rights under the circumstances and the proof in the case.

Instruction C attempted to submit to the jury the fact as to whether the fatal crossing was a dangerous one so as to call for the installation of extraordinary precautions under numerous opinions of this court; but our conclusion is that the evidence did not authorize such an instruction. In the first place, there was but a limited amount of travel over the crossing, and in the second one, the proven obstructions were not such as to render it one within the class calling for such submission. Especially so as to a pedestrian who can control his movements instanter, there being nothing to prevent it. The case is, therefore, different from that of L. & N. Ry. Co. v. Adams' Admr., 205 Ky 203, wherein the traveler was in an automobile requiring some time and covering some distance before he could stop. The track was clear in both directions from the crossing for a sufficient distance to have enabled anyone using the street to see the train in ample time to stop, and it canont, therefore, be said that it was one of such dangerous character as to require the extraordinary precautions contended for.

Our conclusions, therefore, are that upon the merits, and waiving the consideration of defendant's right to a peremptory instruction, no grounds have been shown for our interference with the verdict. and the judgment is affirmed.