Affirming.
A passenger train of the Louisville Nashville Railroad Company collided with a Chevrolet coupe at a highway crossing in the town of Stanford, Ky. The coupe at the time of the collision was being driven by Chester A. Curtis, and Robert E. Parish, Mrs. Daisy Pearl McKiddy, and Elbert Elmer Strong were riding with him. Parish owned the car, and Curtis and Strong were his employees. Mrs. McKiddy was a passenger or guest, but the difference in relationship of the various person-to the coupe plays no part in the case. All of the occupants of the coupe, except Strong, perished in the catastrophe. C. Hays Foster qualified as personal representative for each of the persons killed, and instituted three separate actions against the railroad company to recover damages for the respective estates on the ground that the collision was the consequence of negligence in the operation of the train. The defense was a denial of negligence on the part of defendant, and a claim of contributory negligence on the part of the decedents. The cases were tried together, resulting in a verdict for $6,000 in favor of the Curtis estate, and for $5,000 in favor of the plaintiff in each of the other cases. The railroad company appeals. The cases have been heard together in this court, and will be disposed of in a single opinion.
The errors relied upon for a reversal of the judgments are: (1) That the defendant was entitled to a peremptory instruction; (2) that the verdicts are flagrantly against the evidence, and (3) that certain testimony was erroneously admitted.
1. The argument for a peremptory instruction is predicated upon two grounds, both of which involve an appreciation of the evidence. The first is that there was no tendency of the evidence to show negligence on the part of the railroad company, and the second that the several decedents were guilty of such contributory neglect as to preclude, in any event, a right of recovery. The four occupants of the automobile were residents of Iowa. They were returning home from Georgia, where they had spent the winter. Parish was engaged in the business of tree surgery, and Curtis and Strong worked for him. Mrs. McKiddy was the mother of Curtis, and during the time they were in Georgia had been employed in her trade as a barber. The Chevrolet coupe belonged to Parish, and he was carrying the others back home pursuant *Page 279 
to an agreement so to do. In addition to the four persons, the coupe was carrying about two hundred pounds of tools, five suitcases, and a wardrobe trunk.
The party had left Atlanta, Ga., about 4 o'clock on the afternoon of March 20, 1928, and had traveled all night. They arrived at Pine Knot, Ky., between 6 and 7 o'clock the next morning, where they had breakfast. From that time until the collision with the train occurred Curtis did the driving. Parish and Mrs. McKiddy sat on the seat of the coupe with the driver, and Strong sat in front on a small box, with his head resting in the lap of Parish. They arrived at Stanford, and were proceeding north to Danville. The collision with the train occurred at the Danville street crossing. None of the occupants of the car had been over the road before. A signal post with a cross-arm bearing in large letters the words "Railroad Crossing" is maintained on each side of the railroad at the crossing. The post itself is painted with alternating stripes of white and black, and upon it about fifteen feet above the level of the street is an electric alarm bell. Electric flash-lights with red lenses are attached to the post below the cross-arms. The bells and flash-lights are on the same electrical circuit, so that when the bells begin ringing the lights flash on and off. The train came from the west, or, as the trainmen call it, the south, and the approach to the crossing from that direction is through a cut. The cut extends for some distance, and a house stands on the south side of it near the crossing.
The view of the railroad to the west from the public road as the crossing is approached from the south is obstructed until the traveler is within a few feet of the crossing. There is dispute as to the exact distance, but it is clear from the evidence that a train could not be seen until the traveler on the highway had cleared the northernmost part of the house. The south side of the cut is considerably higher than the railroad track. Strong, the only occupant of the car that survived the accident, testified that they approached at a speed of about 15 miles an hour, and did not observe that a railroad crossing was near until the train was within 8 or 10 feet of them, when they were practically upon the crossing. Some witnesses for the defendant testified that, when about 10 feet from the crossing, the emergency brake on the automobile was applied, which would tend to show the time Curtis discovered the danger. No *Page 280 
warning of the approaching train was heard by the occupants of the car, and none of them were aware of it until the train was upon them. Several witnesses in a position to hear testified to the effect that no signals or warning were heard by them. There was evidence that the electric bell was not heard by people near it. Plainly the evidence was sufficient to take the case to the jury on the issue of negligence on the part of the defendant.
In Chesapeake O. Railway Co. v. Brashear's Adm'x, 124 S.W. 277, we said: "The evidence as to whether or not the statutory signals were given is very conflicting, but the weight of the direct — or, rather, what may be called the affirmative — evidence is to the effect that the signals were given, although several witnesses who were so located that they could have heard the whistle sounded and the bell ringing testified that they did not hear either. We have in more than one case held that evidence of this character is competent, and that the value of it is for the jury." See, also, Chesapeake O. Ry. Co. v. Hawkins (Ky.) 124 S.W. 836; Payne, Agent, v. Barnette's Adm'r, 196 Ky. 489, 244 S.W. 896; Collett's Guardian v. Standard Oil Co., 186 Ky. 147, 216 S.W. 356; Cincinnati, N. O. T. P. R. Co. v. Jones' Adm'r, 166 Ky. 820, 179 S.W. 851. The same reasoning controls the decision of the question respecting the contributory negligence of the driver and occupants of the car. Chesapeake O. R. Co. v. Hawkins (Ky.) 124 S.W. 836; Louisville N. R. Co. v. Taylor, 104 S.W. 776, 31 Ky. Law Rep. 1142; Louisville Gas Electric Co. v. Beaucond, 188 Ky. 725,224 S.W. 179; Louisville N. R. Co. v. Galloway, 219 Ky. 595,294 S.W. 135.
It is the duty of travelers in an automobile approaching a railroad crossing to exercise the care of an ordinarily prudent person under similar circumstances. Davis, Director General, v. Davis, 195 Ky. 522, 242 S.W. 870. Appellant insists that decedents made no effort of any kind to discover the approach of the train. They had the right to rely upon their sense of hearing, which was unimpaired, and it was plainly for the jury to say whether they did listen and also whether they should have done more under the circumstances to satisfy the standard of ordinary care which applied to their conduct at the time. Louisville N. R. Co. v. Galloway, 219 Ky. 595, 294 S.W. 135; Louisville N. R. Co. v. Park's Adm'r, 154 Ky. 269,157 S.W. 27; Louisville N. R. Co. *Page 281 
v. Scott's Adm'r, 184 Ky. 328, 211 S.W. 747; Louisville N. R. Co. v. Locker, 182 Ky. 581, 206 S.W. 780; Louisville I. R. Co. v. Schuester, 183 Ky. 507, 209 S.W. 542, 4 A.L.R. 1344; Louisville N. R. Co. v. Miller, 134 Ky. 716,121 S.W. 648, 135 Am. St. Rep. 433; Chicago, St. L. N. O. R. Co. v. Armstrong's Adm'r, 168 Ky. 104, 181 S.W. 957; Payne, Agent, v. Bowman, 200 Ky. 171, 252 S.W. 1010, 1011.
In the case last cited it was said: "In such cases the rule in this state is, not that a recovery will be prevented by the mere failure of the person killed to stop, look, and listen, but that it is a question for the jury whether such person exercised such care as may be reasonably expected of an ordinarily prudent person under the circumstances; and this must be determined by the jury from the evidence." It is apparent from a consideration of the evidence, in the light of the authorities cited, that the circuit court ruled rightly in declining to instruct the jury peremptorily to find for the defendant. The evidence produced issues which could properly be determined only by the jury. Argument is advanced, and authorities are adverted to at length, to combat the force of the facts and legal principles that have been suggested. We have considered them with painstaking care, but have found nothing inconsistent with the reasoning or conclusions of the cases already cited. In seven of the cases mentioned by appellant we upheld the verdicts of properly instructed juries. Hummer's Ex'x v. L. N. R. Co., 128 Ky. 486, 108 S.W. 885, 32 Ky. Law Rep. 1315; Smith v. Ford Motor Co., 202 Ky. 706,261 S.W. 245; Winston v. City of Henderson, 179 Ky. 220,200 S.W. 330, L.R.A. 1918C, 646; Stephenson's Adm'x v. Sharp's Ex'rs,222 Ky. 496, 1 S.W.2d 957; Graham v. I. C. R. Co., 185 Ky. 370, 215 S.W. 60; Johnson v. L. I. R. Co., 199 Ky. 524,251 S.W. 843; Million's Adm'rs v. L. N. R. Co., 208 Ky. 788,271 S.W. 1085.
In cases where the injured person was deaf or the noise was such that the sense of hearing alone could not reasonably be relied upon, we held that it was contributory negligence not to employ some other means of discovering the danger. Hummer v. L. N. R. Co., 128 Ky. 488, 108 S.W. 885, 32 Ky. Law Rep. 1315; Smith v. Cincinnati, N. O. T. P. Ry. Co., 146 Ky. 568,142 S.W. 1047, 41 L.R.A. (N.S.) 193; Taylor's Adm'r v. Ky. Tenn. Ry. Co., 229 Ky. 129, 16 S.W.2d 785. In six of the cited cases the reversals of the judgments were based *Page 282 
solely upon erroneous instructions, for which new trials were ordered, with appropriate instructions indicated to be given on a new trial. Louisville N. R. Co. v. Gardner, 140 Ky. 772,131 S.W., 787; Southern Ry. Co. v. Winchester, 127 Ky. 144,105 S.W. 167, 32 Ky. Law Rep. 19; City of Harlan v. Parsons,202 Ky. 358, 259 S.W. 717; City of Louisville v. Bott's Adm'x,151 Ky. 578, 152 S.W. 529; Louisville N. R. Co. v. Bays' Adm'x, 220 Ky. 458, 295 S.W. 452; Louisville N. R. Co. v. Foster, 230 Ky. 157, 18 S.W.2d 983.
In the cases cited where peremptory instructions for defendants were directed to be given, it was found that the injury resulted solely from the gross carelessness of the injured person (Age's Adm'r v. L. N. R. Co., 148 Ky. 219,146 S.W. 412; Louisville N. R. Co. v. Hurst, 220 Ky. 402,295 S.W. 458; Chesapeake O. Ry. Co. v. Williams, 148 Ky. 178,146 S.W. 381); or ample specific warning of the danger had been disregarded or ignored (Louisville N. R. Co. v. Hurst,220 Ky. 407, 295 S.W. 458; Voorheis' Adm'r v. C. O. Ry. Co.,220 Ky. 746, 295 S.W. 1031); or there was not a scintilla of evidence tending to prove negligence on the part of the defendant (Piersall v. C. O. R. Co., 180 Ky. 659,203 S.W. 551); or the injured person, with knowledge of the approaching train, had tried to cross the track ahead of it (Barrett's Adm'r v. L. N. R. Co., 206 Ky. 662, 268 S.W. 283); or had thrust himself upon the railroad track immediately in front of a moving train (Illinois C. R. Co. v. Bozarth, 212 Ky. 426,279 S.W. 636). Some of the cases cited involved injuries to employees, and in others the proof left the cause of the injury a matter of surmise, none of which possess particular pertinency to any point presented in the present cases. Louisville N. R. Co. v. Meadors' Adm'r, 176 Ky. 765,197 S.W. 440; Sinclair's Adm'r v. I. C. R. Co., 129 Ky. 829,112 S.W. 910; Age's Adm'r v. L. N. R. Co., 148 Ky. 219,146 S.W. 412; Stuart's Adm'r v. Nashville, C. St. L. R. Co., 146 Ky. 127, 142 S.W. 232; Illinois C. R. Co. v. Jones, 118 Ky. 158,80 S.W. 484, 26 Ky. Law Rep. 31; Sutton v. L. N. R. Co.,168 Ky. 81, 181 S.W. 938; Siemer v. C. O. R. Co., 180 Ky. 111,201 S.W. 469. It is sufficient to say that none of the authorities relied upon by appellant are incompatible with the principles enunciated by the opinions upon which our conclusion is rested.
2. The argument that the verdict is flagrantly against the evidence proceeds upon the assumption that *Page 283 
the testimony for the defendant is positive, overwhelming, and convincing, whilst that for the plaintiffs is meager, shadowy, and incredible in contrast with the other testimony. The defendant introduced thirty witnesses, whilst the plaintiffs on the questions of signals had only five witnesses. Five of the defendant's witnesses were employees located on different parts of the passenger train that collided with the coupe. Six of the others were high school students, who were in the high school building when the train passed. Their evidence related to the time and type of signals given by the train. The other nineteen witnesses were stationed at various places in the vicinity of the accident on both sides of the crossing, some near and others more remote. The engineer testified that he gave a public crossing signal east of Hemp, which is at least a mile west of the Danville crossing; that his engine exploded two torpedoes in response to which a caution signal was given; and that he gave the station signal for Stanford before reaching the Danville crossing. After his engine passed the whistling post for the crossing, he began blowing the whistle for it. He also stated that the bell on the engine was automatically operated, and was ringing continuously until the collision took place. He maintained a lookout ahead, and saw the automobile approaching the crossing when it was about 25 or 30 feet from the railroad. He was then within 60 feet of the crossing, and, being in the cab, the front end of his engine must have been some 25 or 30 feet closer. He then applied his emergency brakes, which was all he could do, but it was too late to prevent the collision. The engineer was strongly corroborated by many of the other witnesses.
There was abundant testimony to the effect that the electric bell at the crossing was ringing, and that the electric lights were flashing when the accident occurred. It was also proven that an inspection subsequently made showed the electrical apparatus in good working order. We are thus confronted with a case in which the evidence for the plaintiffs, although of a negative character, made out a case for the jury, whilst that for the defendant tended strongly to show that no negligence in fact existed. There is no difficulty in ascertaining that the defendant had the greater number of witnesses, and that its defense was clearly proven by affirmative evidence. Yet the rule prevailing in this state requires that the jury shall determine the issue in such cases, and a verdict for *Page 284 
plaintiff on evidence of this character is not flagrantly against the weight of the evidence, notwithstanding the cogency of its contradiction by the other testimony. Powell v. Galloway, 229 Ky. 37, 16 S.W.2d 489.
In Chesapeake O. R. Co. v. Hawkins, 124 S.W. 836, 838, in dealing with this identical question, we said: "We have steadily refused to disturb verdicts on this ground; for the reason that, after all, the question turns on the credibility of the witnesses, their means of knowledge, and, like other questions depending on a number of circumstances, should be left to the jury. L. N. R. R. Co. v. Brown (Ky.)113 S.W. 466; L. N. R. R. Co. v. O'Nan (Ky.) 119 S.W. 1192."
In Chesapeake O. Ry. Co. v. Brashear's Adm'x (Ky.)124 S.W. 277, 278, it is said: "We might with much propriety say that the verdict in this case is against the weight of the evidence, and yet, notwithstanding this fact, that there was sufficient evidence to authorize its submission to the jury. We have not deemed it important to recite the evidence, as to do so would serve no useful purpose. There was some evidence that Brashear was exercising ordinary care for his safety, and some evidence that the signals were not given. Upon this evidence, slight and unsatisfactory as it may be, the jury had a right to find a verdict for the plaintiff; and, under the rule laid down in L. N. R. Co. v. Daniels (131 Ky. 689) 115 S.W. 804, 1198 (119 S.W. 229), we do not feel at liberty to disturb it upon the ground that it is against the weight of the evidence." The mere preponderance in the number of witnesses upon one side does not deprive the jury of its function, or authorize the court to interfere upon a pure question of fact. Chicago, St. L. N. O. R. Co. v. Armstrong's Adm'r, 168 Ky. 104, 181 S.W. 957.
Testimony must be weighed, and we have uniformly adhered to the rule that the verdicts of juries will not be set aside upon a mere numerical superiority of witnesses on the losing side. Powell v. Galloway, 229 Ky. 37, 16 S.W.2d 489; Louisville N. R. Co. v. Baker, 183 Ky. 795, 210 S.W. 674; Louisville Water Co. v. Williams, 140 Ky. 322, 131 S.W. 10; Cincinnati, N. O. T. P. R. Co. v. Richardson, 152 Ky. 814, 154 S.W. 403; Old Colony Trust Savings Bank v. Sherrill-King Mill Lumber Co., 188 Ky. 177, 221 S.W. 520; Chesapeake O. R. Co. v. Gatewood, 155 Ky. 102, 159 S.W. 660. *Page 285 
In Howard v. Louisville R. Co., 105 S.W. 932, 933, 32 Ky. Law Rep. 309, it was observed that "the number of witnesses who testify to a fact is not necessarily a controlling feature in determining its truth; neither does the fact that their evidence may not be contradicted by word of mouth compel its acceptance as true. The jury has the right to disregard the whole or any part of the testimony of any witness, and it is their province to give such weight to the evidence as in their judgment and discretion it is entitled to. In considering the weight to which evidence is entitled, and the credibility that shall be attached to the words of the witness, the jury may, and often do, take into consideration the demeanor, the appearance, and the manner of the witness, and, from these and other circumstances that come under their observation during the trial, may conclude that the witness is not worthy of credit, or is not testifying to the truth, and disregard his entire testimony."
It is not to be overlooked that there were issues in this case in addition to the matter of warning or signals. The speed of the train was a feature, and the reasonableness and timeliness of the signals constituted a factor in the decision of the cases. Chesapeake O. R. Co. v. Warnock, 150 Ky. 74,150 S.W. 29; Illinois C. R. Co. v. France, 130 Ky. 26,112 S.W. 929; Veach v. L. I. R. Co., 190 Ky. 678, 228 S.W. 35; Illinois C. R. Co. v. Murphy, 123 Ky. 787, 97 S.W. 729, 30 Ky. Law Rep. 93, 11 L.R.A. (N.S.) 352.
Section 786, Kentucky Statutes, prescribes the signals that shall be given upon the approach of a railway train to a highway crossing in all parts of the state outside of incorporated cities and towns. It further prescribes that in cities and towns such signals shall be given as the legislative authority thereof might require. Louisville N. R. Co. v. Louisville Provision Co., 212 Ky. 709, 279 S.W. 1100; Louisville N. R. Co. v. Galloway, 219 Ky. 595, 294 S.W. 135; Louisville N. R. Co. v. Bays' Adm'x, 220 Ky. 458,295 S.W. 452. There is no evidence in this case that the town of Stanford, where the accident occurred, had made any provision upon the subject. Under such circumstances only the common-law duties of the railroad company were incumbent upon it. The common-law duties resting upon a railroad company in cities and towns where streets are occupied or crossed by the railroad tracks require that those in charge of the trains must operate them at a moderate *Page 286 
rate of speed, give reasonable and timely warning of the approach of trains, maintain a proper lookout, and take such other precautions as the circumstances and the exercise of ordinary care may demand for the security of life. Chesapeake O. Ry. v. Warnock's Adm'r, 150 Ky. 74, 150 S.W. 29; Chesapeake O. R. Co. v. Booth, 149 Ky. 245, 148 S.W. 61; Louisville N. R. Co. v. Vaughan's Adm'r, 183 Ky. 829,210 S.W. 938; Watson's Adm'r v. C. O. R. Co., 170 Ky. 260,185 S.W. 852; Illinois Cent. R. Co. v. France's Adm'x, 130 Ky. 26,112 S.W. 929; Louisville N. R. Co. v. McNary, 128 Ky. 414,108 S.W. 898, 32 Ky. Law Rep. 1266, 17 L.R.A. (N.S.) 224, 129 Am. St. Rep. 308; Southern R. Co. in Ky. v. Winchester,127 Ky. 144, 105 S.W. 167, 32 Ky. Law Rep. 19. The duties thus defined were submitted to the jury in these cases by instructions which have provoked no criticism or complaint.
There is no doubt of the duty of this court to reverse a judgment based upon the verdict of a jury when it is flagrantly against the weight of the evidence. Civil Code of Practice, sec. 340, subsec. 6; Louisville N. R. Co. v. Baker, 183 Ky. 800, 210 S.W. 674; Chesapeake O. R. Co. v. Johnson, 151 Ky. 809, 152 S.W. 962; Hines, Director General, v. Wilson, 191 Ky. 543, 231 S.W. 23; Commonwealth Life Ins. Co. v. Pendleton,231 Ky. 591, 21 S.W.2d 985. But the verdicts in the cases under review were not flagrantly against the evidence, as has been seen from our references to the record and to cases bearing upon that point. Mere contradiction of the evidence for the successful party, although by many more witnesses, does not bring into operation the rule stated. It is only when the testimony for the other party, together with the proven circumstances, overturns the prima facie case (Illinois C. R. Co. v. Long, (Ky.) 128 S.W. 890), or when the evidence for the successful party is impaired by impeachment (Louisville N. R. Co. v. Baker, supra; Hines v. Gaines, 192 Ky. 198,232 S.W. 624), that the rule is applied.
No useful purpose would be served by recounting the facts of the many cases upon the subject, or by a comparison of them with the facts developed here. The difference in the cases becomes manifest upon a mere recital of the varying facts stated in the respective opinions. The evidence in the cases at bar required that the jury under proper instructions, should determine the issues between the parties, and we are unable to say that *Page 287 
the results reached by the jury are flagrantly or palpably against the evidence as a whole.
3. It is finally insisted that error intervened at the trial in the admission of testimony. One witness was permitted to say that the electric bells had failed to ring upon other occasions some months preceding the accident in question. He was allowed also to express an opinion, based upon his long experience as a locomotive engineer, as to the probable speed of the train, considering the distance the automobile was carried by the impact with the engine. The undertaker, who had charge of the burial of the victims of the accident, testified as to the nature and extent of the bruises found upon the dead bodies. It was thought this illustrated the violence of the collision, and the jury was admonished that it was admitted only for that purpose. If it be conceded that all this testimony was inadmissible (Southern Ry. v. Winchester's Ex'x, 127 Ky. 144,105 S.W. 167, 32 Ky. Law Rep. 19; Louisville N. R. Co. v. Scott's Adm'r, 184 Ky. 319, 211 S.W. 747), the fact remains that it was not prejudicial (Louisville N. R. Co. v. Smith's Adm'r, 203 Ky. 513, 263 S.W. 29, 35 A.L.R. 1238).
It is fair to assume that the jury was composed of sensible men (Stephenson's Adm'x v. Sharp's Ex'rs, 222 Ky. 496,1 S.W.2d 957), and it is not reasonable to suppose that it could have been influenced in rendering its verdict by the inconsequential matters mentioned. We are not authorized to reverse a judgment, unless substantial errors, reasonably calculated to affect prejudicially the rights of the appellant, are manifested by the record. Civil Code of Practice, sec. 756; Louisville R. Co. v. Sweeney, 157 Ky. 620, 163 S.W. 739; Louisville N. R. Co. v. Kemp's Adm'r, 149 Ky. 344,149 S.W. 835; Illinois C. R. Co. v. Mayes, 142 Ky. 382, 134 S.W. 436; Louisville N. R. Co. v. Rowland's Adm'r, 227 Ky. 841, 14 S.W.2d 174.
The judgment in each case is affirmed.