# Louisville & Nashville Railroad Company v. Galloway.

(Decided November 5, 1926.)

(Rehearing Denied, with Modification June 3, 1927.)

## Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Constitutional Law.—Recovery by motorman of street car against railroad for injuries in collision held not against public policy, and not to deny due process or equal protection of law, because motorman was grossly negligent in performance of duties to street car passengers.

2. Railroads.—Contributory negligence of plaintiff street car motorman, in collision with defendant's railroad engine, held for jury, though his was only testimony negativing contributory negligence.

3. Appeal and Error.—Where plaintiff was permitted to withdraw amended petition, and thus change issues of case, defendant declining offered continuance, could not complain.

4. Trial.—Instruction, in street car motorman's action for personal injuries in collision with railroad train, that railroad was required to blow whistle when danger of crossing collision was imminent, held erroneous, since city ordinance permitted such blowing of the whistle in emergencies only; the question of whether an emergency existed being for the jury.

5. Evidence.—Under Ky. Stats., section 2775, courts must take judicial notice of ordinances of city of Louisville.

6. Railroads.—Negligence in not averting collision with street car cannot be predicated on failure of railroad to have lookout riding on footboard of engine.

7. Evidence.—Reading in railroad injury case of doctor's testimony at former trial held proper, under Ky. Stats., section 4643, affidavit to effect that, in spite of proper steps taken, doctor was out of town having been filed.

8. Appeal and Error.—Where same erroneous instruction was given at first trial of railroad injury case as at second trial, court on appeal will not substitute first verdict for second.

WOODWARD, WARFIELD & HOBSON and A. M. WARREN for appellant.

MORTON K. YONTS and O'REAR, FOWLER & WALLACE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The appellee, whom we shall call the plaintiff, recovered a judgment for $5,000 for personal injuries, and from that judgment the defendant has appealed. This

case had been tried once before, and a new trial granted in the trial court. On that trial the jury returned a verdict for $10,000, in favor of the plaintiff, and by a cross-appeal plaintiff is seeking to have that verdict substituted for the $5,000 verdict.

Plaintiff was a motorman on a one-man street car of the Louisville Railway Company, and, at the time of the accident out of which this litigation came, he was operating this car, and was going south on Twelfth street, which is crossed at right angles by Ormsby avenue. Twelfth street is a 60-foot street, and has two street car tracks upon it. Ormsby avenue "is an 80-foot street, and has two railroad tracks upon it. About 6:45 a. m. on the 18th of January, 1923, as the street car operated by the plaintiff started across the railroad tracks on Ormsby avenue, it was struck by an east-bound switch engine belonging to the defendant and in that collision the plaintiff sustained injuries for which he recovered the judgment stated.

The defendant has nine different grounds upon which it is asking to have this judgment reversed. We will not consider these in the order in which it has presented them, but will regroup and rearrange them and dispose of them as we get to them. One of its complaints is that the plaintiff was guilty of gross negligence, which was the proximate cause of this accident, and that to permit the plaintiff to recover will deprive the defendant of its property without due process of law; will deny to the defendant the equal protection of the law; and will violate section 1 of article 14 of the Amendments to the Constitution of the United States. The reasoning by which defendant arrives at this conclusion is not convincing, and we do not think this ground is well taken.

Its next ground is that it will be contrary to a sound public policy to permit plaintiff to recover, because he was in charge of this street car, filled with passengers, for whose protection and safety the plaintiff, as the representative of the Louisville Railway Company, owed to them the highest degree of practicable care, and whose safety he jeopardized on the occasion mentioned. It is insisted that to sustain plaintiff's right of recovery would be to put a premium upon the gross negligence and carelessness of street car motormen. We are not impressed by this contention. The degree of care which an employee upon one railroad must exercise in regard to his

own safety against collisions with trains of another is merely ordinary care and his conduct is not to be measured by that high degree of care which he is required to exercise for the safety of passengers upon his train. Thompson v. Chicago & R. Co., 71 Minn. 89, 73 N. W. 707; 33 Cyc. 742. In Elliott on Railroads, section 1178, we find:

> "As to the railroad company, the driver or other proper employee of the street car company should exercise the same care as the driver of a private vehicle."

It also complains because the court overruled the defendant's motion for a peremptory instruction, made at the close of plaintiff's evidence, and renewed at the close of all the evidence, and in another ground it insists that this verdict is not sustained by sufficient evidence, and is contrary to law. We will dispose of these two together.

The defendant's theory is that the plaintiff was guilty of such gross contributory negligence that he should not be permitted to recover. The plaintiff testified that before starting across the railroad track he looked up and down the track to see if an engine or train was approaching, and saw none. The plaintiff said that this was a dark, foggy morning, and that his vision was obstructed by dense clouds of smoke that were settling to the earth, and, as a result of the fog and smoke and lack of light, he was unable to see the defendant's approaching engine until after he had started across the track, and then it was within 30 feet of him, and it was too late for him to avert the accident. As to the fog and smoke and lack of light, the plaintiff's testimony is almost entirely without support, so that it is persuasive that he did not look, else he necessarily would have seen the approaching engine, for nearly all the other witnesses testified that this engine could have been seen, and some of them say they did see it as far as 500 or 600 feet away. The speed of this engine is variously estimated at from 8 to 10 miles an hour up to between 25 and 30 miles an hour. The engineer, who was seated on the right-hand side of the cab, and whose view was obstructed by the front of the engine, said he never did see the street car. He said he could see the crossing from the time he started his engine until he got there, which was a distance of 723 feet.

There are two different theories as to how this accident occurred. The defendant's theory is that, when this street car stopped at Twelfth and Ormsby to discharge passengers, it stopped on Twelfth street, before it entered Ormsby avenue, and the car was then concealed by buildings and structures on the west side of Twelfth street; for that reason the engineer did not see the car; that the street car, in fact, ran into the engine, and struck the engine on the side as it was crossing Twelfth street. The engineer testified that he immediately set his brake in emergency, and that the engine stopped before it got across Twelfth street. He further testified that as soon as his engine stopped some of the train crew gave him a signal to go ahead and clear the crossing, and that he continued east on Ormsby avenue enough to get over the crossing.

The plaintiff's theory of how this accident happened is that, when he stopped this street car to let off his passengers, he stopped after his car had passed part of the way into Ormsby avenue, so that the front part of his car was within about 6 feet of the railroad track. It is the plaintiff's contention that he was crossing the railroad track when the engine ran into him; that he was going slowly across, making perhaps 3 miles an hour; and that the engine struck his car just back of the vestibule. We have to guess at a great many of the measurements given, but, if his statement is true, then he had probably moved about 12 feet from the time he stopped until the engine struck his car, and, accepting his estimate of the speed of this engine, and putting it at his figure, about 25 miles an hour, this engine was going about eight times as fast as he was, and, while he was traveling 12 feet, this engine would have traveled about 100 feet, and thus at the time he claims to have looked, the engine was within 100 feet of him, and these figures make the truth of his statement that he did look, and that he could not see the engine, seem highly improbable. Contributory negligence is usually a question for the jury, and the plaintiff's testimony here, although his is about the only testimony to justify it, was sufficient to authorize the submission of this case to the jury. In the case of Louisville Gas & Electric Co. v. Beaucond, 188 Ky. 725, 224 S. W. 179, we said:

> "  .  .  .  If the facts upon which a charge of contributory negligence is based are conceded or

proven by undisputed testimony, and the inferences which can be drawn from undisputed facts are such as about which ordinarily intelligent men do not differ, the question of contributory negligence becomes one of law for the court, but such a question is nearly always one for the jury.''

When the evidence in this case is measured by that rule, it is apparent that the submission of this question to the jury was proper.

The defendant is complaining because the court allowed the plaintiff, at the conclusion of all the evidence, to withdraw his amended petition. It is true that the withdrawal of this amended petition, in certain respects, changed the issues, but, when it was withdrawn, the court offered to continue the case, if defendant so desired, but defendant elected to have the trial continue; hence it cannot now complain of that.

The defendant is complaining of the action of the court in giving and refusing instructions. In instruction No. 1, the court, in defining the duty of the railroad company as it approached this crossing, said:

"They were required to blow the engine whistle when necessary to avoid a collision, or when the danger of a collision was imminent, but not to blow it when unnecessary.''

This crossing was in the city of Louisville, and in the case of L. & N. R. R. Co. v. Louisville Provision Co., 212 Ky. 709, 279 S. W. 1100, we held that, by virtue of section 786, Ky. Stats., a railroad company within a city is not required to give the statutory signals, but shall give such signals as the legislative authorities of the city may require.

By section 2775, Ky. Stats., the courts of this commonwealth are required to take judicial cognizance of the ordinances of the city of Louisville. We find on page 689 of the general ordinances of Louisville an ordinance from which the following is taken:

"1. That when any car, cars, or locomotive, propelled by steam power, shall be moving in the city of Louisville, the bell of the engine shall be constantly sounded within the city limits.

"2. It shall be unlawful for any person or corporation to blow, or cause to be blown, any steam or

other railway or railroad whistle in the city of Louisville for any purpose, except to prevent collision or in case of imminent danger."

On page 690 we find an ordinance from which this is taken:

"1. That it shall be unlawful for any person or corporation to blow or permit to be blown any steam or other railway or railroad whistle within one-half mile of any hospital for the sick, or any other place used for the care or cure of the sick or infirm in the city of Louisville."

By these provisions the governing authorities of the city of Louisville forbade the blowing of a whistle by a railroad company, but made it permissible, in certain sections of the city, for the purpose of avoiding a collision. The desire of the city authorities to avoid annoyance of railroad whistling must yield to emergencies, and it should have been left to the jury to determine whether or not this was such an emergency. By instruction No. 1, as given, the court erroneously determined that this was such an emergency, and required the whistle to be blown. That should have been left to the jury. Instruction No. 1 should have been in substantially this form:

"No. 1. It was the duty of the defendant and its agents, servants, and employees having in charge its engine and tender, at the time and place where the accident complained of in this action occurred, to exercise ordinary care to prevent a collision between the engine and any other vehicle at the intersection of Twelfth and Ormsby avenue; to keep a lookout ahead for persons or vehicles crossing or about to cross the intersection named; to ring the engine bell constantly as they approached the intersection; to keep the engine under such reasonable control as would enable them, in the exercise of ordinary care by both parties, to avoid a collision at the intersection; and if, in view of the time those in charge of the engine had in which to act, and of their other efforts, if any, to avoid the collision, they had time to whistle, then it was their duty to do so, if the jury may find from the evidence such was reasonably necessary to avoid a collision, and the danger of a collision was imminent.

"If the jury believes from the evidence that the defendant, its agent, servants, or employees in charge of the engine, failed or neglected to perform any one or more of the duties prescribed herein, and such failure on their part (if any there was) was the proximate cause of the accident described in the evidence, and the plaintiff was thereby injured, then the law is for the plaintiff, and the jury should so find; but unless they so believe, the law is for the defendant, and the jury should so find."

The defendant is complaining of the ruling of the court in admitting and excluding evidence. On this trial the court admitted evidence that there was no one riding upon the footboard on the front of this engine, and that a person riding there could have seen this crossing, and could have seen the street car; the plaintiff's theory being that, if some one had been riding there, such person could have, by some means not clear to us, discovered that the plaintiff was going to drive the street car across the track in front of the engine. We had a similar question before us in the case of L. & N. R. R. v. Gilmore's Adm'r, 131 Ky. 132, 109 S. W. 321, 33 Ky. Law Rep. 74, 21 L. R. A. (N. S.) 723, and in that case we said:

"Nor do we think it negligence on the part of appellant not to have had a third person present to assist in keeping a lookout when the fireman was otherwise engaged."

Over the defendant's objection the plaintiff was allowed to read, from the stenographer's transcript of the evidence given on the first trial, the evidence of Dr. Yeager. The plaintiff filed his affidavit that Dr. Yeager was out of the city. The record shows that, after proper application, the court had made an order for the personal attendance of Dr. Yeager at this trial, and the plaintiff had taken every other step necessary to secure Dr. Yeager's attendance. By virtue of section 4643, Kentucky Statutes, the reading of the doctor's testimony taken on a former trial was permissible under these circumstances.

The plaintiff has asked that we substitute the verdict of the jury returned on the first trial for the verdict in this case, but, as the instructions given upon the two trials are the same, the error for which this judgment is re-

versed necessarily entered into, and tainted, the $10,-000 verdict.

The judgment is reversed, and the defendant is awarded a new trial to be had in conformity to this opinion.