## Silver Fleet Motor Express v. Gilbert

Oct. 27, 1942.

Logan Patterson and R. W. Keenon for appellant.

Davis, Gilbert & Edwards for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Jim Gilbert brought this action against Silver Fleet Motor Express, a corporation engaged in the business of a common carrier in the transportation of freight and express over the highways of Kentucky and other states, to recover $2,999 for damages to his automobile and personal injuries received by him in an accident allegedly caused by the negligence of the defendant's agent and servant in charge of one of its trucks. On the trial of the case the jury returned a verdict for the full amount claimed, and the defendant has appealed.

The accident occurred September 16, 1939, shortly before midnight on U. S. Highway 25E about four miles west of Pineville. Jim Gilbert, a negro, and three other negroes, Bev Henson, Bob Henson, and June Gilbert, left Manchester, in Clay county, late in the afternoon in a Ford automobile owned by Gilbert, intending to go to Lynch, in Harlan county. Near the corporate limits of Manchester they picked up a white man, Rhennie Griffin, who paid Gilbert $1.50 to take him to Pineville. Jim Gilbert testified that he and the other occupants of his car were sober when they left Manchester and drank no liquor on the trip. He took one drink of beer about noon. He stopped in London to get something to eat, and in Corbin for gasoline. Just before the accident he drove around a curve and saw a Silver Fleet truck approaching from the opposite direction. The truck was weaving from side to side and he pulled to the right, but the driver of the truck cut back sharply to the right as the two cars met and the trailer part of the truck struck his automobile, which turned over on the left side of the road. The truck never stopped, but shortly after the accident another Silver Fleet truck drove up and stopped. His car was to the right of the center of the road when it was hit, and both cars were traveling about 30 miles an hour. Bob Henson was riding on the front seat of the Gilbert car. He testified that none of the occupants of the car drank any liquor during the trip, and all of them were sober. After the Gilbert car rounded the curve on the right side of the road he saw an approaching truck zigzagging back and forth. In describing the accident, he said:

> "Well, it looked like he was aiming to hit us in the face and he clipped the front end of the truck and missed us and cut the trailer part that you haul stuff in, when he pulled the front end of the truck, it come down too far for it to get back over until it hit us."

When the case was called for trial, plaintiff moved for a continuance on account of the absence of two of his witnesses, June Gilbert and Bev Henson, and filed his affidavit setting out what they would testify if present. The defendant consented to the reading of the affidavit as their depositions, and the court overruled the motion for a continuance. The testimony of June Gilbert and Bev Henson, as contained in the affidavit, corroborated Jim Gilbert and Bob Henson. Sol Tinsley, a negro boy

19 years of age, who lived nine miles west of Pineville, testified that on the night of the accident he was walking to his home from Pineville, and that he met a car going east which crowded him off the road. He heard a truck coming and, looking around, saw the words "Silver Fleet" on the front of the truck. The left wheels of the truck were to the left of the center of the road in the direction in which the truck was traveling. The truck hit the car which had passed him, and continued on west toward Barbourville. After the truck passed the car crossed to the north side of the road and turned over. He went back to the scene of the accident and saw another Silver Fleet truck which had driven up and stopped. The proof for appellant tended to show that Bev Henson was drunk and that the other occupants of the car, including appellee, were under the influence of liquor. Rhennie Griffin, who was a passenger in the Gilbert car, testified that he, Jim Gilbert, the driver, and the other three occupants of the car took several drinks of whisky after they left Manchester; that he objected to the reckless manner in which Jim Gilbert was driving and asked him to let Bob Henson drive. He saw Jim Gilbert in the hospital the morning after the accident, and Gilbert told him he had learned what kind of a truck had struck his car and that it was a Huber & Huber truck. O. H. Black testified that he heard Bev Henson say after the accident that he knew nothing about how it happened because he was fast asleep. Dr. Charles B. Stacy, who treated Jim Gilbert and the other injured occupants of the car who were taken to a hospital in Pineville, testified that Bev Henson was drunk when he reached the hospital. Two witnesses testified that June Gilbert told them that he did not know until after the accident that it was a Silver Fleet truck which caused the accident and then someone told him. Howard Prather, who was the driver of the only Silver Fleet truck that could possibly have caused the accident, testified that his truck struck no car and was in no accident on the night in question. The testimony as to the identity of the truck was conflicting, but was sufficient to take the case to the jury on that issue, Webb v. Dixie Ohio Express Co., Inc., 165 S. W. (2) 539.

Appellant complains of instruction No. 1 chiefly because it assumes that the truck involved in the accident was owned by Silver Fleet Motor Express. The ownership of the truck was the principal issue in the

case, and the instruction was, in effect, a peremptory one in favor of the plaintiff on this issue. The first part of the instruction reads: "The Court instructs the jury that it was the duty of the driver of the truck of the defendant, Silver Fleet Motor Express," and the instruction concludes: "If you believe from the evidence in this case that the driver of defendant's truck failed to perform one or more of said duties, and that by reason thereof he caused and brought about the collision between said truck and the plaintiff's automobile and by reason thereof the plaintiff, Jim Gilbert, was injured and his automobile damaged, then the law of this case is for the plaintiff and you will so find; but unless you so believe, the law of the case is for the defendant and you will so find." The instruction should not have assumed that the truck involved in the accident was owned by appellant, but the question of ownership should have been submitted to the jury for its determination.

Instruction A defined the duties of the plaintiff as the driver of his car, and told the jury that if they believed from the evidence that he failed to observe any one or more of such duties and by reason of such failure, if any, on his part he helped to cause or bring about the collision, they should find for the defendant "although you may believe from the evidence that the truck involved was the property of the defendant and that the driver of said truck was negligent as defined in Instruction No. 1." It is argued by appellee that the quoted part of instruction A cured the error in instruction No. 1, and that when the two instructions are read together the question of ownership was submitted to the jury. As heretofore stated, the principal issue in the case was whether or not the defendant owned the truck which collided with the plaintiff's car. The question of ownership should have been submitted in a concrete instruction, and this was not done. Instruction No. 1, in effect, told the jury that the truck belonged to the defendant and was driven by one of its servants, and the quoted paragraph from instruction A did not alter, qualify or explain that statement. Appellant also complains of instruction No. 1 because it submitted acts of negligence not pleaded. The only acts of negligence on the part of the driver of the truck alleged in the petition are that he was driving at an excessive rate of speed and on the left side of the highway. In his petition the plaintiff alleged negligence in specific terms as follows: "Its

agents and servants in charge of one of the defendant's trucks engaged in business for the defendant, and in the regular course of their employment, and with gross negligence and carelessness, drove and operated defendant's truck at a reckless and dangerous rate of speed, and upon the wrong and left side of said highway, in the direction in which defendant's truck was being driven." here was no proof that the truck was operated at a dangerous rate of speed, and consequently, the only question as to negligence to be considered by the jury was whether or not the truck was being operated on the left side of the highway. The court properly omitted from the instruction any reference to speed, but did refer to duties of the driver of the truck other than his duty to operate his truck upon his righthand side of the highway. Since the judgment must be reversed for the error in instruction No. 1 in failing to submit to the jury the question of ownership, it is unnecessary to determine whether the error in the second respect was prejudicial, but on another trial the court should limit the acts of negligence to the one supported by the pleadings and proof. In Consolidated Coach Corp. v. Bryant, 260 Ky. 452, 86 S. W. (2d) 88, where the facts were very similar to the facts in the instant case, a proper instruction was outlined. We find no error in the other instructions.

Appellant moved the court to set aside the swearing of the jury when appellee's counsel injected into the case the question of liability insurance during the cross-examination of the witness M. D. Underhill, and the court's refusal to sustain the motion is urged as error. M. D. Underhill investigated the accident after it occurred, and took a number of written statements from the occupants of appellee's car. He was introduced as a witness by appellant and testified concerning statements made by appellee and his witnesses in direct conflict with their testimony at the trial. His testimony was damaging, and appellee, on cross-examination, had the right to show, if possible, his bias or interest. Appellee's counsel asked him whom he was representing when he made the investigation, and he said: "Markel Service, Inc." He was then asked if he was representing anybody else, and he answered: "American Fidelity & Casualty Company." Appellee's counsel then stated: "That is the real party at interest, isn't it," and the court sustained an objection to this state-

ment. This statement should not have been made, but the other questions, under the circumstances, were not improper. The court admonished the jury as follows: "The answer that this witness made as to whom he was working for comes to you for the purpose only of showing what interest, if any, this witness has in this law suit and for that purpose only." A similar situation arose in Coral Ridge Clay Products Company v. Collins, 181 Ky. 818, 205 S. W. 958, and it was held proper on cross-examination of an antagonistic witness to show his interest by eliciting the fact that he was an officer or agent of the defendant's insurance carrier. As said in that case, it is error to permit testimony to the effect that a defendant in an action for damages is protected by indemnity insurance where such testimony sheds no light upon the issues being tried and it is apparent that it was offered for no reason, except to create a prejudice in the minds of the jury or to induce it to find a verdict for the plaintiff because of the fact that the defendant would not be required to satisfy it. This rule should not apply where a representative or agent of the insurance company investigates the accident and testifies for the insured. The plaintiff should be permitted to show the interest of the witness. Marsee v. Johnson, 260 Ky. 615, 86 S. W. (2d) 299; Trevillian v. Boswell, 241 Ky. 237, 43 S. W. (2d) 715; Hedger v. Davis, 236 Ky. 432, 33 S. W. (2d) 310.

It is argued that the verdict is excessive, but we think this contention is without merit in view of the nature and extent of appellee's injuries. He received serious and permanent injuries and incurred large hospital and medical bills.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.