## Louisville Taxicab & Transfer Co. v. Johnson.

November 1, 1949.

Rehearing denied December 16, 1949.

598

Robert L. Page for appellant.

Lawrence Grauman and Snyder & Mayer for appellee.

VAN SANT, COMMISSIONER—Affirming.

The action was instituted by appellee to recover of appellant for permanent injuries and loss of time sustained as a result of being struck by a taxicab allegedly owned and being operated by appellant. The original petition averred specific acts of negligence, and the issue was joined thereon. However, on the first trial the court instructed the jury as if appellee had alleged and relied on a general allegation of negligence. Per-

ceiving this to have been error, the Trial Court sustained appellant's motion for a new trial; whereupon appellee filed an amended petition, alleging negligence in general, without adopting the allegations of the original petition. On the second trial he was awarded a verdict in the sum of $5,750.00, upon which judgment was entered.

As grounds for reversal appellant contends that the court erred: (1) in overruling its motion for a directed verdict, because (a) the proof was insufficient to make out a prima facie case of liability and (b) the negligence of appellee was the proximate cause of the accident; (2) in failing to properly instruct the jury (a) by refusing to give a concrete instruction as to the ownership of the taxicab, and (b) by refusing to instruct the jury as to appellee's duties under the traffic ordinances of Louisville; (3) in not limiting appellee's right of recovery to the specific acts of negligence alleged in the original petition; and (4) in admitting incompetent evidence.

Appellee was engaged in a small retail coal business, and made deliveries to his customers by means of a pushcart. On the night of December 15, 1945, in making a delivery, he was pushing his cart westerly on Jefferson Street between 15th and 16th streets in Louisville. Jefferson has three marked lanes for westbound traffic on the north side of the center line, and the same number on the south of the center line for eastbound traffic. Parking is permitted on the lanes adjacent to the curbs, and at the time and place of the accident an automobile was parked in the lane adjacent to the north curb, by reason of which appellee was required to guide his cart into the center lane for westbound traffic. An unidentified automobile passed appellee immediately before he was struck by the cab allegedly owned by appellant. The unidentified car was proceeding in the southern or inside lane for westbound traffic and passed within five or six feet of appellee's cart. While glancing at the passing automobile, appellee observed a taxicab in the center lane "bearing down on" him, but it was so close that he could not change his course in time to avoid the accident. The cab struck him, knocking him toward the curb and breaking his right leg in two places. While lying on the ground he noted the cab was painted

yellow, and observed the letters and figures ''JA. 2121,'' appellant's telephone number, printed on the rear of the cab. Several people came to his assistance one of whom called the Police Department. When the Police officers arrived at the scene, appellee told them that he had been struck by a ''Yellow Cab.'' The officers drove him to the General Hospital where he was confined three weeks. He remained in a cast for seven months, and was required to walk with a crutch for five months after the cast was removed. Two disinterested witnesses stated they saw the cab immediately after the accident; that it was a ''Yellow Cab'' bearing the printing described by appellee; that an electric light on top of the cab was illuminated, which light was later identified as an indicator used to signify that the meter was turned on, which inferentially established the fact that the cab was being operated in the course of the business of its owner. One member of the Police Department testified that he remained at the Terminal of the Cab Company until twenty-five or thirty cabs had reported after their final run for the night. Another member of the Department testified that he checked fifteen or twenty cabs at a later hour. Neither of these witnesses observed any mark on the cabs they inspected which would indicate that any of them had participated in a recent accident. One of the attorneys for appellant testified that two days following the accident he inspected ''a hundred and forty to a hundred and sixty taxicabs there in the garage and in the repair garage'' and that none of them bore evidence of having been in an accident. An employee of the company in charge of the fleet on the night of the accident testified that at the time of the accident more than two hundred cabs were in operation. Construed in its most favorable light the testimony for appellant shows merely that one hundred and sixty (160) of the more than two hundred (200) cabs which were in operation at the time of the accident did not participate in the accident, without accounting for the activity of more than forty of its cabs operating at the time. Since only one cab participated in the accident, this evidence is insufficient to refute a prima facie case of ownership if appellee's proof was sufficient to establish one. In Webb v. Dixie-Ohio Express Co., Inc., 291 Ky. 692, 165 S. W. 2d 539, we held that proof of the peculiar color used by the de-

fendant on its trucks and the inscription of its name on the truck which participated in the accident was sufficient evidence to create the presumption that such truck was owned by the defendant; and that evidence that the truck was being driven on a route designated in the owner's franchise was sufficient to create a presumption that at the time of the accident the truck was being operated by an agent of the defendant within the scope of his employment. The opinion in that case cited with approval a similar holding in Huber & Huber Motor Express v. Martin's Adm'r., 265 Ky. 228, 96 S. W. 2d 595, and several cases from foreign jurisdictions. The evidence in this case shows that appellant had a franchise to operate taxicabs in Louisville at the time and place of the accident, the cab which participated in the accident was painted the peculiar color used by appellant on its cabs, appellant's telephone number was inserted at its usual place on the rear of the cab, and the busy signal light was burning. Thus it will be seen that the proof was amply sufficient to establish a prima facie case that the taxicab in question was owned by appellant, and, at the time and place of the accident, it was being operated by one of appellant's agents acting within the scope of his employment. Neither can we agree that appellee's own negligence was the sole and proximate cause of the accident. Appellee was proceeding along Jefferson Street in a lane of travel wherein he had the right to be. He was not required to keep a lookout "behind" to dodge a car approaching him from the rear. He had the right to assume that the operator of any vehicle approaching him from the rear would keep a lookout ahead and drive in a careful manner in order to avoid striking him. The law does not impose upon such a user of a highway the requirement of looking in opposite directions at the same time. We therefore hold that there was no evidence introduced to establish negligence on the part of appellee. On the other hand the unexplained and uncontradicted evidence that the accident occurred as described by appellee was sufficient, under the doctrine of res ipsa loquitur, to submit to the jury the question of negligence on the part of the driver of the cab and its proximate result. Ralston v. Dossey, 289 Ky. 40, 157 S. W. 2d 739.

In so far as pertinent to the second ground relied on for reversal, instruction number one reads: "If you

believe from the evidence that at the time and place referred to in the evidence, the taxicab of the defendant, the Louisville Taxicab and Transfer Company, and referred to in the evidence, struck the plaintiff, Allie Johnson, and he was thereby injured, then it was the duty of the driver of said taxicab * * *.''

Instruction number two reads: ''If you believe from the evidence that the plaintiff, Allie Johnson, was not struck by the taxicab of the defendant, Louisville Taxicab and Transfer Company, at the time and place referred to in the evidence, then the law is for the defendant, Louisville Taxicab and Transfer Company, and you will so find.''

The instruction offered by appellant and which it is contended should have been given by the court is in the following words: ''Unless you believe from the evidence that the automobile that struck the plaintiff was a Yellow Cab owned and operated by the defendant, by its employee acting for and on business for the defendant, you will find for the Louisville Taxicab and Transfer Company.''

We perceive no substantial difference in the instruction complained of and in instruction number two given by the court, when viewed in the light of the evidence. The evidence was conclusive of the fact that the taxicab, if owned by appellant, was being operated by its agent acting within the scope of his employment. That being true, it was unnecessary for the court to instruct on agency. Appellant relies on this Court's decision in Silver Fleet Motor Express v. Gilbert, 291 Ky. 696, 165 S. W. 2d 541, but in the instruction given in that case the court assumed that the truck involved in the accident was owned by the defendant, whereas in the instant case, he submitted the question of ownership in both instructions number one and number two. The contention of appellant in respect to the failure of the court to instruct on the duty imposed by law on appellee in the circumstances likewise is without merit, since, as we have seen, there was no evidence presented in this case from which an inference could be drawn that appellee violated any duty imposed on him by law.

The third ground for reversal is based on the theory that the court erred in permitting appellee to amend

his petition after the first trial, consequently appellee's right to recover still was limited to the specific acts alleged in the original petition. Appellant cites and relies on the rule expressed in Wigginton's Adm'r v. Louisville Ry. Co. et al., 256 Ky. 287, 75 S. W. 2d 1046, 1049, wherein the court said: "Negligence may be alleged generally. (Citation). Under such an allegation of negligence the plaintiff may prove any acts of negligence of the defendant (citation); but, where he alleges special acts of negligence (citation), or where the petition contains a charge of general negligence *coupled* with the specific acts of negligence, he must confine his evidence and right to recover to the specific acts (citation)." (Our emphasis.)

The rule above quoted is well settled, but the pleadings in this case do not call for the application of the rule. As we heretofore have noted, the amended petition did not iterate or adopt the allegations of the original petition in respect to specific acts of negligence. It asserted the same cause of action as was asserted in the original petition but based the right to recover on a general instead of a specific allegation of negligence. The effect of filing this pleading was to withdraw the allegation of specific acts and substitute therefor a general charge. In other words, the amended petition was in reality a substituted petition complete in itself. In the Wiggington case, supra, the charge of general negligence and the relation of specific acts of negligence were contained in the same petition. In 41 American Jurisprudence, pages 507, 508, Section 313, it is said:

"An amended pleading which is complete in itself and does not refer to or adopt a former pleading as a part of it supersedes the former pleading. The original pleading is abandoned by the amendment and is no longer a part of the pleader's averments against his adversary, and the plaintiff cannot avail himself of the allegations contained in the superseded pleading, unless they are set out in the amended pleading or referred to therein."

The converse likewise is true. A plaintiff cannot be held in his proof to the allegations contained in a superseded pleading unless they are set out in the amendment or are referred to therein. This Court's

decision in Schang v. Alamo Theater Corporation, 272 Ky. 744, 115 S. W. 2d 292, follows the reasoning above set forth, and Section 134 of the Civil Code of Practice provides that the court may at any time, in furtherance of justice, permit a pleading to be amended "by inserting other allegations material to the case." In Schrodt's Ex'r et al. v. Schrodt et al., 189 Ky. 457, 225 S. W. 151, and in London & Provincial Marine & Fire Ins. Co. of London, England, v. Mullins et ux., 268 Ky. 814, 105 S. W. 2d 1057, the court held that a party had the same right to amend a pleading after reversal as he had before the first trial. We are of the opinion therefore, that the court did not abuse its discretion in permitting appellee to file the amended petition, and, since the effect of the allegations of the amended petition was to withdraw previously averred specific acts of negligence, the court properly instructed the jury as to all of appellant's duties at the time and place of the accident.

It follows that appellee was not, as is contended, estopped by the declarations contained in his original petition from relying on proof in support of the averments contained in the amended petition. Carter v. Jordan et al., 154 Ky. 75, 156 S. W. 1066; Louisville & N. R. Co. v. Pointer's Adm'r, 113 Ky. 952, 69 S. W. 1108; Louisville & N. R. Co. v. Greenwell's Adm'r, 155 Ky. 799, 160 S. W. 479, 481. In the last-cited case the court said:

"Clearly the cause of action is for the death of Thomas Greenwell occasioned by the negligence and wrongful act of appellant, its agents and employes. The amendments and the original petition set up different acts of negligence which occasioned the death, but related to the same wrongful act and cause of action. * * *

"In the case at bar the inquiry was whether the death of Greenwell was due to appellant's negligence. His death was the cause of action. If it was due to the negligence of appellant, there may have been sole or concurrent causes, and the plaintiff might allege and rely upon any or as many of them as he cares to in his original action, and the court may in its discretion permit the plaintiff to plead by amendment any acts of negligence relating and contributing to the cause of action, that is, the injury complained of, and previously set forth."

The incompetent evidence complained of in the fourth ground for reversal was the reading of the transcribed testimony of Doctors Edward Schweitzer and Kenneth Crawford, given on the first trial of the case. The testimony of the doctors was read on motion of appellee, supported by the affidavit of one of his attorneys. The affidavit showed that an order signed by the court directing the two doctors to personally appear in court on the day of the trial was placed in the hands of the Sheriff of Jefferson County, and returned by him with the notation in each instance: ''Not found, said to be out of the state.'' The affidavit further stated that the affiant personally had attempted to locate each of the above-named doctors; that he had been advised that Doctor Schweitzer was out of the jurisdiction of the court being somewhere in the state of West Virginia but the exact location could not be learned; that Doctor Crawford was out of the jurisdiction of the court having located somewhere in the state of Indiana but the exact place was unknown and could not be learned; that it was impossible to obtain the personal attendance of the witnesses or to take the deposition of either of them, and the only way their testimony could. be produced was by the reading of their testimony given at the previous trial. KRS 422.150 reads: ''The testimony of any witness taken by a stenographic reporter pursuant to KRS 28.430 may, in the discretion of the court in which it is taken, be used as evidence in any subsequent trial of the same issue between the same parties, where the testimony of such witness cannot be procured, but no testimony so taken shall be used in any criminal case without the consent of the defendant.''

In Louisville & N. R. Co. v. Galloway, 219 Ky. 595, 294 S. W. 135, it was held that under this section of the Statute a stenographic transcript of the evidence given on the first trial may be read on the second trial where it was shown by plaintiff's affidavit that the witness was out of the city, the court had made an order for the personal appearance of the witness, and the plaintiff had taken every other step necessary to secure his attendance. To the same effect is the decision in Coca Cola Bottling Works of Lexington v. Seale, 299 Ky. 409, 185 S. W. 2d 685. We think the decisions in opinion Nowak v. Joseph, 283 Ky. 735, 142 S. W. 2d 970, do not conflict with the L. & N. v. Galloway, supra,

or Coca Cola Bottling Company of Lexington v. Seale, supra. The affidavit in the Nowak case failed to state any fact showing that the addresses of the absent witnesses could not have been obtained by the exercise of reasonable diligence. But in this case, as well as the L. & N. and Coca Cola Bottling Company cases, the affidavit supplied this deficiency.

The judgment is affirmed.