**Paul BURGAN et al., Appellants,**

**v.**

**Ray HARRISON et al., Appellees.**

Court of Appeals of Kentucky.

March 31, 1967.

Howell W. Vincent, R. Barry Wehrman, Wehrman & Wehrman, Covington, for appellant Burgan.

John J. Blackburn, Covington, for Commonwealth, Dept. of Highways.

O'Hara & Ruberg, Covington, Calvin Prem, Cincinnati, Ohio, for appellees.

PALMORE, Judge.

The appellant Burgan brought this action against the appellees, Ray Harrison and Wellen Ford, Inc., for personal injuries sustained by him when an automobile allegedly driven by Harrison within the scope of his authority as a used car salesman for Wellen Ford, Inc., sideswiped a tollhouse in which Burgan was working as a toll collector for the Commonwelath of Kentucky. The Commonwealth intervened seeking reimbursement of the defendants for workmen's compensation paid by it to Burgan as a result of his injuries. At the close of the evidence introduced by the claimants the trial court directed a verdict for both defendants and entered judgment dismissing the claims. Burgan and the Commonwealth appeal.

The accident happened at about 7:30 P.M. on September 24, 1962. Burgan was collecting tolls from northbound traffic at the Cincinnati exit (in Ohio) of one of the bridges crossing the Ohio River between Covington, Kentucky, and Cincinnati, Ohio. The automobile that struck the toll station did not stop, and all Burgan was able to observe with respect to its description and occupants was that it appeared to be a light-colored bluish green 1959 or 1960 model Ford station wagon with a Kentucky dealer's license tag the number of which began with an "X" and that it was occupied by one person, the driver. Immediately afterward the operator of a car following the hit-and-run vehicle gave Burgan its license number. This information was reported by Burgan to the Cincinnati police, who investigated the accident. Burgan also kept and later submitted as an exhibit with his testimony a portion of the toll booth structure bearing a paint mark from the collision.

The on-scene accident report made by the police showed the license number as "X 40568." Apparently there was no such number. However, the number of Wellen Ford's plates was "X 4056," and on September 25, 1962, the next day, Cincinnati policemen called at Wellen Ford's place of business in Covington and were shown among its used cars a Ford station wagon answering to the description shown on the accident report. This automobile had what appeared to be fresh damage to the left front portion. Arthur Boss, Wellen Ford's used car sales manager, informed the officers that on the previous evening just prior to the accident Harrison, one of his salesmen, "had taken the car and gone out to eat and that he failed to return and when he didn't return by the following morning

Mr. Boss became concerned and he decided to go out and look for the car. He went across the river and was fortunate enough to find it parked down in the bottoms, somewhere on Front or Second Street."

What Boss did not tell the officers, as appears from his deposition later introduced in this proceeding, was that Harrison had telephoned him at three or four o'clock that morning, told him that the car had been involved in an accident on the bridge in question while being driven by a customer to whom he had loaned it for demonstration, and advised him where the vehicle could be found.

Burgan himself also inspected the Ford station wagon on the premises of Wellen Ford, observed the marks of damage and the color of paint as compared with that which had been scratched on the toll booth, and ascertained that the license number was the same one that had been given to him the night before at the scene of the accident. At the trial Burgan identified this vehicle as the one that struck the toll booth.

Though Harrison lived in Cincinnati, efforts by the investigating officers to get in touch with him, through calling at his home and leaving word with his wife, and later telephoning, proved to be futile. It appears that he did not immediately return to work at Wellen Ford, but accepted employment around the first of October in Houston, Texas. He returned to Wellen Ford in January of 1963 and remained in its employment until May 6, 1963. He gave a discovery deposition but did not appear at the trial, nor was the deposition introduced in evidence. He declined to answer, on the constitutional ground that it might incriminate him, questions submitted to him in the form of a request for admissions, and the trial court sustained such refusal except as to the question of whether he had ever been convicted of a felony.

It was established through a request for admissions addressed to Wellen Ford that on September 24, 1962, at approximately 7:30 P.M. Harrison was employed by it as a salesman, that his regular hours of work were from 9:00 A.M. to 9:00 P.M.,[1] that he was permitted as a salesman to use a blue Ford station wagon, and that the blue Ford station wagon was abandoned in Cincinnati at the aforementioned time and was recovered by Wellen Ford through Boss on the next day, September 25, 1962. Albert J. Wellen, president of Wellen Ford, is the corporate officer who responded to the request for admissions. After he had first answered "I don't know" to each of the requests the trial court required him, in his representative capacity, to exercise whatever means were reasonably within the power of the corporation to obtain the information necessary in order for it to admit or deny the matters put to it by the request for admissions,[2] including a personal inquiry of Harrison himself, despite his having theretofore invoked the constitutional privilege against self-incrimination. With regard to the question of whether Harrison was driving the car at the time of the accident, Mr. Wellen's ultimate response was that "the said Ray Harrison had refused to discuss the matter with him, claiming his privilege against self-incrimination under the Kentucky Constitution," and that his inquiries among other employes of the company had not elicited any further enlightenment.

The depositions of Wellen and Boss under cross-examination were taken on September 5, 1963, almost a year after the accident. At that time Wellen testified he had never discussed the incident with Harrison. Boss testified that in his own conversations with Harrison he had been told only that Harrison had loaned the car to a customer and the customer had had an accident. Boss professed not to know whether Harrison

---

1. The regular working hours were established also through the deposition of Boss.

2. We recite this otherwise unnecessary information for the purpose of illustration and approval of the procedure followed by the trial court.

had been with the customer at the time of the accident, but said he would try to find out by asking Harrison. As it developed, Boss did not testify at the trial, so the appellants never had the opportunity of further examination to determine whether he followed through with an effort to get the information from Harrison.

The trial was held on January 21 and 22, 1965. Appellants had caused a subpoena or subpoenas to be issued for a large number of Wellen Ford's employes, past and present, including Boss. The record does not disclose whether a call of the witnesses took place before the parties announced ready, but when Boss was called to testify he did not answer, whereupon counsel for Burgan moved that he be arrested forthwith. Counsel for the defendants then disclosed that the subpoena had not been served on Boss, despite the sheriff's return to the contrary.[3] Out of the presence of the jury it was then established that the sheriff had left the copies of the subpoena with Mr. Wellen, who assured him that he would see that they were delivered to the various witnesses employed at his place of business, including Boss; but that after the sheriff departed Wellen telephoned counsel and was advised not to deliver them.

It being established that Boss had not been validly subpoenaed, the trial court refused to have him arrested, because he was not in contempt. Counsel for Burgan then moved for a continuance, but the trial court, noting that Boss' deposition was available, overruled the motion and permitted the deposition to be introduced and read to the jury.

As we have come to the conclusion that the evidence was sufficient to withstand the motion for a directed verdict it is unnecessary to decide whether it was an error for the trial court to refuse a continuance under the circumstances just described. It needs to be said, however, that the prejudice in not having such a witness in person is not cancelled out by a reading of his deposition. We are convinced from the record that the conduct of both this particular witness, Boss, and his employer, Wellen, has been consistently evasive to the point of incredibility.[4] When the credibility of a witness is manifestly questionable, it is of considerable importance for the jurors to have an opportunity to observe his demeanor under examination. And when it appears, as it does here, that a litigant has actively practiced a deception upon his adversary, a court need not be overly circumspect in exercising its discretionary powers to bring the scales into balance.

■ The trial court's ruling on Harrison's refusal to give answers that might incriminate him was correct. Though CR 36.02 provides that an admission given pursuant to CR 36.01 cannot be used against the party in any other proceeding, the effect of the protection necessarily is limited to proceedings over which this court has rule-making power. Our rules of procedure would have no force in a prosecution in Ohio. Cf. Federal Deposit Insurance Corporation v. Logsdon, 18 F.R.D. 57 (W.D.Ky.1955).

■ The request for admissions directed to Wellen Ford submitted five questions, all of which were at first answered "I don't know." The first three of these covered matters that certainly must have been within the knowledge of the corporation. Hence the trial court, upon motion of the plaintiffs, ruled the responses insufficient and ordered that they be deemed admissions. Plaintiffs contend that the other two should have received the same disposition. They are the two by which the company was requested to admit that

---

3. The brief for Harrison and Wellen Ford suggests an insufficiency of the sheriff's return as it related to Boss, but counsel for both sides expressly agreed to the trial court's statement for the record "that the return to the Sheriff shows that Mr. Boss was served with a subpoena," etc.

4. At the trial, for example, Wellen testified that he did not know where Boss was.

Harrison was driving the station wagon at the time of the accident. Though it is possible, or even probable, that by the exercise of reasonable diligence Wellen Ford could have gained that information at some time before the request for admission was made, it is by no means certain that it actually had done so. It is our opinion that the trial court properly exercised its discretion in requiring the company to utilize its best efforts to ascertain it and in allowing a reasonable time for that purpose. If it were utterly clear that Wellen was not telling the truth our opinion would be otherwise, but it is no more than a reasonable suspicion.

■ The question of whether the evidence was sufficient to support a verdict favorable to Burgan is a close one. The defendants contend, and the trial court held, that it would require supposition and speculation. There are, of course, many decisions in which it has been held that a verdict may not be permitted on the basis of conjecture. "A fact is not proved by circumstantial evidence if it is merely consistent with such fact * * * In other words, the circumstantial evidence must go far enough to induce a reasonable conviction that the facts sought to be proved are true and must tend to eliminate other rational theories." United Electrical Coal Companies v. Brown, Ky., 354 S.W.2d 502, 503 (1962). The abstract principle is clear. Its application to the facts of a given case is another matter.

We do not doubt the sufficiency of the evidence to show the identity and ownership of the station wagon. Nor, if Harrison was driving it at the time of the accident, do we think it would be unreasonable for a jury to conclude that he was acting within the scope of his duties as a salesman for Wellen Ford. If the evidence was enough to support a finding that Harrison was driving the car, it would equally support a finding that he was engaged in the regular

and normal pursuit for which his possession of the car was authorized and intended. Cf. Lever Bros. Co. v. Stapleton, 313 Ky. 837, 233 S.W.2d 1002, 1005–1006 (1950). He had the car with the company's knowledge and permission, and the accident occurred during his regular working hours. The difficult question is whether his being the last person known to have been in possession of the car, which possession in terms of hours was recent, supports a reasonable inference that he was still in possession of it at the time of the accident.

When the evidence shows that the last known and recent driver was an *occupant* of the vehicle at the time of an accident, but he has been killed and there is no direct evidence to establish whether he or some other occupant was driving, there is said to be a "presumption"[5] that the situation shortly before the accident continued to exist. See annotation, "Proof, in absence of direct testimony by survivors or eyewitnesses, of who, among occupants of motor vehicle, was driving it at time of accident," 32 A.L.R.2d 988, 992. In such a case there is one evidentiary circumstance that is not present in this one—that is, it is an established fact that the person alleged to have been the driver was in the car. On the other hand, there is also the countervailing circumstance that there were other occupants as well, one of whom could have been the driver, whereas here we have but one occupant, the driver himself.

In cases involving commercial vehicles as distinguished from pleasure cars this court has held that proof sufficient to establish ownership is sufficient to prove also that the vehicle was being operated by a servant of the owner and on the owner's business, provided that the accident occurred at a time and place within the normal scope of the owner's business activity. Louisville Taxicab & Transfer Co. v. Johnson, 311 Ky. 597, 224 S.W.2d 639, 27 A.L.R.2d 158 (1949); Webb v. Dixie-Ohio Express Co.,

5. See Lee v. Tucker, Ky., 365 S.W.2d 849 (1963), for a discussion of whether a presumption or a permissible inference is created.

291 Ky. 692, 165 S.W.2d 539 (1942). The used car owned and held by Wellen Ford for purposes of resale may not fall strictly in the category of a "commercial vehicle" as such, but certainly its operation by a salesman for display and demonstration would qualify as a commercial use.

■ "By the weight of authority, proof of defendant's ownership implies possession and control personally or through another under circumstances making defendant liable for negligent operation, especially where the car is a business vehicle being operated during business hours. It causes no special hardship upon the owner to show by positive evidence that the vehicle was not under his control at the time or, if in charge of his agent, that such agent was not acting for him, if such are the true facts, for such information is peculiarly within the knowledge of the person against whom the presumption is raised." 9B Blashfield, Cyclopedia of Automobile Practice and Procedure, § 6057, pp. 530, 531 (Bandy 1954).

■ As we have said, the evidence was enough to establish that the Ford station wagon owned by Wellen Ford was the vehicle that struck the toll booth and injured Burgan. It is admitted that Harrison had possession of it within his authority as a servant and employe of Wellen Ford and within the period of his regular work day. Clearly the bridge between Covington and Cincinnati would have been and was within the normal area of his work as a car salesman. The accident happened within a relatively short time after he left Wellen Ford's place of business with the car. At the time of the accident the car was occupied by one person, the driver, whose identity is in question. It is our opinion that in the absence of proof to the contrary these circumstances reasonably permit a jury to find that Harrison was the driver and that he was acting within his authority as a salesman for Wellen Ford.

The judgment is reversed with directions for a new trial.

All concur.