JACK COLE COMPANY and Dixie Highway Express, Inc., Appellants,

v.

Mrs. W. H. HUDSON, Appellee.

No. 25106.

United States Court of Appeals
Fifth Circuit.

March 14, 1969.

Rehearing Denied April 3, 1969.

E. L. Snow, Arlo Temple, Snow, Covington, Temple & Watts, Meridian, Miss., for appellants.

P. Gerald Adams, Meridian, Miss., for appellee.

Before GOLDBERG and AINSWORTH, Circuit Judges, and SPEARS, District Judge.

SPEARS, District Judge:

This is an appeal by both corporate defendants in a diversity suit from the trial court's denial of their motions for directed verdict and for judgment notwithstanding the verdict. The plaintiff had alleged that under the doctrine of *respondeat superior* the defendants were liable to her for the injuries she suffered when a large truck bearing the name of one of the defendants forced her automobile off the highway. The jury found each of the defendants liable to plaintiff in the amount of $8,630.00. We affirm.

The parties will be referred to as they were in the trial court.

Defendants' position is that they cannot be held liable under the doctrine of *respondeat superior,* because there is

no evidence that the offending truck was owned by either of them, or that the driver was an employee who was furthering the business of one of them at the time of the accident. The basic question raised by this appeal is whether the testimony of witnesses, together with any presumptions that the evidence has raised, warranted the trial court's submission of those issues to the jury.

## THE EVIDENCE

On May 3, 1966, plaintiff, a 69 year old woman, was driving her automobile in a southerly direction on U. S. Highway 11 between Meridian and Laurel, Mississippi. At about 1:30 p. m., as she approached an incline and a curve in the road she discovered that a large yellow-colored truck was coming upon her from behind and blowing its horn. It then pulled out and attempted to pass her, despite the fact that in the lane in which they were traveling there was a yellow line painted to indicate a no passing zone. Before the truck had completely passed plaintiff's automobile, it pulled back into the right hand lane, apparently hitting the front part of plaintiff's automobile and forcing her off the road. She lost control of her car, and it eventually crossed the highway, climbed a steep incline, and slid down into the ditch bordering the east edge of the highway. The offending truck did not stop to render aid, and although investigating officers made efforts to locate it and to intercept it farther down Highway 11, it was never found.

Plaintiff produced four witnesses, all women, who saw the accident. Three of them were traveling together in an automobile in a northerly direction on Highway 11 (the direction opposite that in which plaintiff and the truck were traveling). All three testified they saw that the truck had pulled out into their lane and was apparently trying to pass the automobile driven by plaintiff. When it appeared that the truck might not be able to complete this maneuver and return to the right hand lane in time, the driver slowed her automobile and stopped it on the highway. Even at that, the testimony was that the truck came close to colliding with their automobile. All three women saw the automobile of plaintiff go out of control immediately upon the truck's pulling back into its right hand lane. The only description they could give of the offending truck was that it was a tractor-trailer van type, with the tractor portion painted yellow and the words "Jack Cole" painted in large letters over the cab on the front of the aluminum-colored trailer. Neither witness could give a more precise description of the truck or its driver, and neither of them was able to testify as to what printing appeared on the tractor, if indeed there was any printing on it at all.

The plaintiff testified that as the truck approached her from the rear she could see that it was yellow, but she did not read any lettering on it. The fourth witness had been standing near her house east of the highway when she first saw the rear portion of plaintiff's automobile extending behind the truck, and she then saw the automobile go out of control. She said that the trailer of the truck was an aluminum color, but that she did not see any writing on it.

It was established that the Jack Cole Company (hereinafter referred to as "Cole") owns all the stock of the Dixie Highway Express, Inc. (hereinafter referred to as "Dixie"), but that only Dixie had the proper permits to operate on this portion of Highway 11; that defendants together own more than 200 tractors (almost all of which were painted the same shade of yellow), and approximately 700 trailers (many if not all of which were aluminum-colored and bore signs reading "Jack Cole Company"); and that neither of the defendants knew of any of their equipment that might have been stolen on May 3, 1966, the day the accident occurred.

Witnesses for the defendants testified that it is a common practice among truckers to interchange trailers among the various trucking companies in much

the same manner that railroad cars are interchanged among railroad companies. When a trucker reaches the limit of the area in which he is authorized to operate, rather than unloading the trailer and loading the freight into another trailer, he merely detaches his trailer and attaches it to the tractor of a company which is authorized to carry the freight on toward its ultimate destination. Thus, the owner of the trailer portion of a truck unit may or may not be the owner of the tractor. Records are kept of trailer interchanges made with other trucking companies, but the records indicate only the company who has the particular trailer and not the route over which the trailer is to travel. Since Cole was the parent corporation of Dixie, there had been devised between these two companies a method of operation that was even easier than the interchanging of trailers. When a Cole truck came to an area where it was not authorized to operate, but where Dixie was authorized, the driver merely placed temporary placards on the side of the tractor covering the Cole identification and identifying the tractor as a Dixie tractor. Moreover, it was shown that several trucking companies authorized to operate in the area had yellow tractors, although there was some indication that the shade of yellow varied among the companies and that the shade used by Cole could be easily distinguished from those used by the others.

From the evidence, it appears that this portion of Highway 11 is on the route used by truckers in carrying freight between the major cities of Birmingham and New Orleans. Agents of Dixie testified that their records showed that only four units had made the trip south from Birmingham to New Orleans on May 3, 1966. The time cards, logs, and personal testimony of the drivers of those units indicate that none of them was in the vicinity of the accident at the time it occurred. The accident occurred at about 1:30 p. m., while the four units passed the scene of the accident at about 8:00 a. m., 11:15 a. m., 4:15 p. m., and

4:30 p. m. respectively. A Dixie truck with a Jack Cole sign on its trailer approached the scene of the accident from the south at about 1:45 p. m., only minutes after the accident occurred. The driver of this truck testified that he had been making the trip north from New Orleans to Birmingham and that he had passed no Jack Cole tractor-trailer units proceeding south that day. He said that he had passed several yellow tractors belonging to other trucking companies, but that he had not paid any attention to the type of trailers they were pulling. He did say, as did officers who testified in the case, that there were several side roads abutting onto Highway 11, immediately south of the accident scene, that were constructed and maintained sufficiently well for heavy trucks to travel over them.

The investigating officers made an attempt to intercept the offending truck farther south on Highway 11. Information about the accident, and a description of the offending truck, were transmitted by radio at 1:52 p. m. to an officer who was then located on Highway 11, about 24 miles south of the scene of the accident, whereupon that officer requested other officers in the area farther south to watch for a Jack Cole truck coming south on Highway 11; and then he stayed on Highway 11 for two hours watching for the truck, but neither he nor the other officers ever reported locating it. However, the first officer did say that in his attempt to locate the hit and run driver he failed to alert officers to watch the side roads already mentioned above.

Dixie had a terminal in Meridian, Mississippi, from which local deliveries were made; and the terminal manager testified that on the day of the accident, there was one local delivery truck with a yellow tractor operating south of Meridian, the area where the accident occurred. However, he said that this local delivery unit differed from the over-the-road units in that the yellow cab was of a different shape and type, and the Jack Cole trailer being used was

an open type covered with a green tarpaulin, rather than the van type used on longer hauls.

## THE MOTION FOR JUDGMENT NOT-WITHSTANDING THE VERDICT

Plaintiff first argues that defendants may not maintain this appeal because they failed to lay sufficient predicate for their motion for judgment notwithstanding the verdict. Rule 50(b) provides that "a party who has moved for a directed verdict" at the close of all the evidence, may later move to have an adverse judgment set aside and "to have judgment entered in accordance with his motion for a directed verdict". Thus, before a party may move for a judgment notwithstanding the verdict he must have first properly moved for a directed verdict, stating "specific grounds therefor".

At the close of plaintiff's evidence, defendants notified the court of their desire to move for a directed verdict, and a formal motion, setting forth the specific ground that there was no evidence that the offending truck was owned by either defendant or that it was being operated on the day of the accident by an employee of either of them, was later presented to the court in chambers and denied.[1] Although at the close of all the evidence defendants did not again make such a motion orally for the record, they did apparently make a request in chambers that the jury be instructed to find for them. This was refused, as was a similar request made in open court after the court's charge to the jury had been given.

■ There can be no doubt that the trial judge was well aware of the reasons for the requested jury instruction, and, under the circumstances, we hold that this constitutes a sufficient predicate for the subsequent motion for judgment notwithstanding the verdict. Roberts v. Pierce, 398 F.2d 954, 956 (5th Cir. 1968).

In the recent case of O'Neil v. W. R. Grace and Company, 410 F.2d 908 (5th Cir. 1969) we said:

The standard to be followed in ruling upon a motion for judgment notwithstanding the verdict is the same as that to be followed regarding a motion for directed verdict; indeed, a judgment notwithstanding the verdict technically is a "judgment entered in accordance with * * * [the] motion for directed verdict". FED.R.CIV.P. 50(b). A judgment notwithstanding the verdict should not be granted unless the evidence, together with all inferences that can

---

1. The trial judge commented, in part, as follows in overruling the motion for directed verdict at the close of plaintiff's case:

The evidence is much stronger in this case against Dixie than it is against Cole. These two corporations are owned by the same people, they operate under the same management, and it is rather clear to the Court that Cole is not supposed to have been in this area. They don't have a franchise apparently to operate at the scene of this accident. They have some kind of arrangement whereby the truck of Cole could have been used by * * * [Dixie] under * * * [Dixie's] franchise by the simple expedient of changing some little removable signs on the doors of the equipment to satisfy some technical requirement of the Public Service Commission and as to what these signs were on that occasion on this particular truck that was the offender in this case, there is no specific evidence thereof. The witness for the trucking company couldn't read for the Court the name on the driver's side of the door of the truck on plaintiff exhibit 1–A and the Court couldn't read it. That wasn't the offending truck, that was merely a truck to show how these Cole trucks looked. * * *

It seems to me under the testimony of the plaintiff, and even under the testimony of this traffic claim superintendent of Cole, that the plaintiff would be entitled to go to the jury in this case against both defendants on his testimony and particularly on his testimony on cross examination by the plaintiff, the first time he was on the witness stand in this case. I think he made an issue for the jury and that is the basis of my ruling.

reasonably be drawn therefrom, is so one-sided that reasonable men could not disagree on the verdict. See Ricketson v. Seaboard Airline R. R. Co., 403 F.2d 836 (5th Cir. 1968).

■ This means that the action of the trial court overruling the motion for judgment notwithstanding the verdict should not be reversed, unless the evidence is such that a jury could not reasonably conclude from the existence of the sign and other circumstances that the driver of the offending truck was an employee of the defendants.

## DEFENDANT COLE'S NAME ON TRAILER—PRESUMPTIONS— REBUTTAL

Defendants assert and plaintiff agrees that

Mississippi seems to follow the rule generally recognized elsewhere, that where a defendant's name appears on a commercial vehicle involved in an accident, there is a rebuttable presumption that the vehicle is owned by the defendant and that the operator of the vehicle is an employee of defendant, and was, at the time of the accident, engaged in the scope of his employment and in the furtherance of the business of the master. Merchants Co. v. Tracy, 175 Miss. 49, 60, 166 So. 340, 343; Jakup v. Lewis Grocer Co., 190 Miss. 444, 200 So. 597; West v. Aetna Ins. Co. of Hartford, Conn., 208 Miss. 776, 45 So.2d 585.

See also Cameron v. Hootsell, 229 Miss. 80, 90 So.2d 195 (1956), where, in a fact situation similar in many respects to the instant case, the court held the evidence sufficient to warrant submission to the jury on the issues of ownership, agency, and scope of employment.

Defendants refer us to cases from states other than Mississippi, in which the so-called majority rule is applied, among which are Ross v. St. Louis Dairy Co., 339 Mo. 982, 98 S.W.2d 717 (1936), and Constitution Pub. Co. v. Dale, 164 F.2d 210 (5th Cir. 1947), a diversity case tried pursuant to Alabama law. A later Alabama case is Barber Pure Milk Co. v. Holmes, 264 Ala. 45, 84 So.2d 345 (1955).

Other cases following the same rule include Louisville Taxicab & Transfer Co. v. Johnson, 311 Ky. 597, 224 S.W.2d 639, 27 A.L.R.2d 158 (1949); Rose v. Ruan Transport Corp., 214 F.2d 583 (7th Cir. 1954); and Falstaff Brewing Corp. v. Thompson, 101 F.2d 301 (8th Cir. 1939).

The foregoing cases hold that a *prima facie* case has been established by the party in whose favor the rebuttable presumptions of ownership, agency, and scope of employment have arisen; however, such presumptions disappear if "strong and clear" (*Holmes, supra*), or "positive and unequivocal" (*Ross, supra*), or "uncontradicted or invulnerable" (*Rose, supra*), or "clear and undisputed" (*Constitution, supra*), evidence is produced showing that the contrary is true. Falstaff Brewing Corp. v. Thompson, *supra*, expresses the same rule in a slightly different way by saying that the proof offered in rebuttal must be so clear that reasonable minds can draw but one inference. 101 F.2d at 303–304.

In *Holmes, supra*, presumptions of ownership, agency, and scope of employment were raised from the proof that the vehicle had defendant's name printed on it, and that defendant frequently conducted business in the area where the injury to plaintiff occurred. The defendant attempted to refute the presumptions by producing testimony of drivers and other agents of defendant who were assigned to the area where the accident occurred, to the effect that they were not involved and knew nothing about the accident. The court held that although the proof tended to show that it was improbable that any of the defendant's vehicles or agents were involved, where there was any evidence from which inferences in accord with the presumptions could be drawn, and no "strong and clear" evidence to the contrary was produced, the presump-

tions were not refuted, and the issues of ownership and agency should go to the jury. 84 So.2d at 353.

In Louisville Taxicab & Transfer Co. v. Johnson, *supra*, plaintiff had been hit by a taxicab which he was able to identify only as a "Yellow Cab", with the telephone number of defendant printed on it. The court stated that upon proof that the vehicle bore the characteristic color and name of the defendant, there arose a presumption that the vehicle was owned by the defendant, and that if the vehicle was being driven on a route designated by the owner's franchise, a presumption arose that the driver was an agent of the defendant, acting within the scope of his employment. In other words, the court held that proof that the vehicle bore defendant's characteristic markings, and was operating where the defendant was authorized to operate, was sufficient to establish a *prima facie* case under the doctrine of *respondeat superior*. *Id.* 224 S.W.2d at 641. The defendant attempted to remove these presumptions by showing that none of its taxicabs was involved in the accident. However, it accounted for only 160 of its more than 200 taxicabs in operation at the time of the accident; therefore, since more than 40 taxicabs were not accounted for, the court held that the evidence was insufficient to refute the *prima facie* case made by the plaintiff. *Id.*

We have concluded that the so-called majority rule is the proper one to follow in this case. See Revlon, Inc. v. Buchanan, 271 F.2d 795, 800, 81 A.L.R.2d 222 (5th Cir. 1959); and Planters Manufacturing Co. v. Protection Mutual Insurance Co., 380 F.2d 869, 871 (5th Cir. 1967).

Here, defendants' proof accounted for only four or five tractor-trailer units out of hundreds of tractors and trailers operated by them. It is undisputed that Dixie had authority to operate in the area where the accident happened. The trailer attached to the hit and run tractor bore the name of the defendant Cole,

and the "Jack Cole" sign was a characteristic marking also of the Dixie trucks. There were close corporate ties between Cole and Dixie, and the management was the same for both companies.

The record reflects that no truck had been stolen on the day of the accident; that someone in the company keeps contact with all the trailers and has information as to which trucker has any trailer being operated under an interchange arrangement; that the accident took place only ten to twelve miles from defendants' Meridian terminal; that there were several side roads available for the hit and run driver to pull off the main highway and evade the search for him farther south on Highway 11; and that Highway 11 was regularly used by defendants for freight shipments in both northerly and southerly directions, from which it could be theorized that one of defendants' drivers had made an unscheduled or unrecorded southerly trip, or that a northbound truck had backtracked during its journey.

In any event, it was within the province of the jury to weigh the evidence and to deliver a verdict consistent with a factual theory acceptable to reasonable men, and in doing so it was not required to believe the testimony of defendants' witnesses, which was far from "invulnerable". If the defendants' tractor was not the offending vehicle, and they really did not know whose tractor was involved, they were certainly in a better position than anyone else in the case to find out, and by the exercise of reasonable diligence they should have been able to obtain that information for presentation in court. Yet, even though they were using the public highways of Mississippi for a strictly commercial enterprise, they failed to bring into the lawsuit, directly or indirectly, those who most likely caused plaintiff's injuries, if they did not; they did not explain the whereabouts of approximately 196 tractors and 696 trailers; and they did not offer into evidence their records

relating to interchange transactions. Without attempting to recreate the events of May 3, 1966, as the jury must have done, we are unable to say that the inferences they must have drawn from the evidence are unreasonable; nor can we conclude that reasonable men would have been unable to develop from the evidence a theory whereby defendants would be held responsible for the injuries sustained by the plaintiff. On the contrary, in our opinion, the defendants completely failed to produce the kind of "strong and clear", "clear and undisputed", "uncontradicted or invulnerable", or "positive and unequivocal," evidence required to remove the presumptions that they owned the offending vehicle, that the driver was an agent of either or both, and that he was acting within the scope of his employment at the time of the accident.

The judgment of the district court is affirmed.